## HENRY J. SARJA v. IRON RANGE RESOURCES & REHABILITATION AND ANOTHER.

144 N. W. (2d) 377.

July 22, 1966—No. 39,955.

*Henry J. Sarja,* pro se, for appellant.

*Robert W. Mattson,* Attorney General, *Joseph A. Coduti,* Assistant Attorney General, and *Austin D. Ditzler,* Special Assistant Attorney General, for respondents.

NELSON, JUSTICE.

Certiorari to review a decision of the commissioner of employment security approving and adopting a decision of the appeal tribunal of the

Department of Employment Security denying appellant unemployment compensation during a 30-day suspension.

Appellant was employed as a mining engineer and supervisor in charge of the Mineral Research Division of the Department of Iron Range Resources and Rehabilitation (IRRR). His duties included planning, supervising, and interpreting geophysical surveys and mineral estimations and evaluations. He was directly responsible under civil service rules to the commissioner of IRRR, A. M. DeYoannes.

It appears from the record that there were a number of circumstances, beginning in the year 1962, which gave rise to a series of disagreements between appellant and DeYoannes. We do not find the transcript especially lucid as to the nature of appellant's demands and criticisms.

The appellant began writing a series of letters to the Civil Service Commission questioning the validity of the examination which he had taken for the position of assistant commissioner of IRRR and under which he had failed to qualify. In these letters he raised implications and inferences of irregularities and discrimination on the part of the IRRR commissioner, the Civil Service Commission, and the Examining Board. There were further disputes between appellant and the IRRR commissioner beginning in 1963, relevant to procedures prescribed by the commissioner in compliance with an order of the Department of Administration pertaining to the purchase of gasoline by IRRR employees. Following the issuing of these directives and orders by his superior, appellant wrote to the governor rather than follow the directives, stating that he did not feel that as a supervisor and professional engineer he should be required to service cars—this despite the fact that other department heads and commissioners actually performed similar services. It further appears that appellant was in conflict with the commissioner regarding the functions and responsibilities of the assistant commissioner of IRRR and that he wrote directly to the Civil Service Commission, communicating his objections to an alleged new position created without civil service announcement or competitive examination. He complained that he would be subjected, contrary to regulation, to the direction of the assistant commissioner, against whom he felt personal antagonism. He received assurances from the Civil Service Commission to the contrary.

On April 9, 1964, appellant again wrote the governor summarizing his dissatisfaction with IRRR policies and enclosing a copy of a letter to the IRRR commissioner alleging improprieties, irregularities, and wasteful acts, and charging the commissioner with discrimination against appellant and his staff. This letter was the culmination of complaints and criticisms of the commissioner over the previous 3 years. Feeling that the morale and efficiency of the department were adversely affected by appellant's actions, at this point the commissioner, in accordance with § 10.3 of the state Civil Service Rules, suspended appellant for 30 days without pay, effective April 27, 1964.

Appellant filed a claim for unemployment benefits on April 27, 1964, at the local office of the Department of Employment Security at Hibbing, and filed continued claims for unemployment benefits for benefit-weeks ending May 4 through May 26, 1964. On May 27, 1964, appellant completed serving his 30-day suspension and returned to his regular duties at IRRR.

On June 4, 1964, a claims deputy of the Department of Employment Security issued a determination that claimant was involuntarily separated from his employment for misconduct interfering with and adversely affecting his employer's interests. Appellant appealed from the foregoing determination under Minn. St. 268.10 to a regularly constituted appeal tribunal of the department, which after a hearing rendered a decision holding that appellant was involuntarily unemployed through his own fault and was therefore ineligible for unemployment benefits for the period of his suspension.

Appellant appealed from this decision to the commissioner of employment security. A hearing followed and the decision of the appeal tribunal was sustained. Thereupon appellant procured a writ of certiorari to obtain a review of the determination of the commissioner of employment security.

So far as we are able to ascertain, this case is one of first impression here. It involves the construction of Minn. St. 268.03 and Minn. St. 1961, § 268.09, subd. 1(1).

Minn. St. 268.03 provides:

"As a guide to the interpretation and application of sections 268.03 to 268.24, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burdens. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state will be promoted by providing, under the police powers of the state for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Minn. St. 1961, § 268.09, subd. 1, provides in part:

"An individual shall be disqualified for benefits:

"(1) If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer or was discharged for misconduct connected with his work or for misconduct which interferes with and adversely affects his employment, if so found by the commissioner, for not less than three nor more than seven weeks of unemployment in addition to and following the waiting period."

The Department of Employment Security having refused to award appellant any unemployment compensation under the provisions of §§ 268.03 and 268.09, subd. 1(1), the issues before us appear to be as follows:

(1) Does the word "discharge" in § 268.09, subd. 1(1), include a suspension?

(2) May unemployment compensation benefits be paid while one is under suspension?

■ Perhaps the most important question before the court on this appeal is simply whether "discharge" as intended by the legislature includes

a "suspension" or not. The authority to suspend for disciplinary purposes is contained in Minn. St. 43.24. It would appear to be inimical to that act to permit an employee to receive benefits while under suspension. Under those conditions a suspension of an employee would have little if any effect upon him, as it would be more like a paid vacation than a disciplinary measure. We cannot conceive of the legislature's intending such a result. We are bound to hold that "discharge" must include the lesser "suspension."

Appellant refers to only one case in his brief, Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. (2d) 815. While the Anson case is not factually analogous to the case at bar, it does point out that an employee is not entitled to benefits if his own activities tended to create his unemployment. A search through the exhibits and the transcripts in the case at bar indicates quite clearly that appellant, through his own conduct, caused his suspension and thus became voluntarily unemployed under the provisions of § 268.09, subd. 1(1), and therefore ineligible to receive unemployment benefits.[1]

Respondent contends that by voluntarily agreeing to discipline according to civil service rules as a condition of employment the appellant by his own volitional acts agreed to be suspended from employment, thereby constituting disqualification for unemployment benefits under § 268.09, subd. 1(1), as interpreted in Bergseth v. Zinsmaster Baking Co. 252 Minn. 63, 89 N. W. (2d) 172; Anson v. Fisher Amusement Corp. *supra;* Stream v. Continental Machines, Inc. 261 Minn. 289, 111 N. W. (2d) 785; Jackson v. Minneapolis-Honeywell Regulator Co. 234

[1] See the following cases on disciplinary layoff: Schock v. Board of Review, 89 N. J. Super. 118, 214 A. (2d) 40; Ky. Comm. Dec. No. 4243-4246, May 28, 1962, 4 CCH, Unemp. Ins. Rep. (Ky.) par. 8251.05; Cal. App. Bd. Ben. Dec. No. 6700, Mar. 22, 1963, 2 CCH, Unemp. Ins. Rep. (Cal.) par. 8034.07; Mich. App. Bd. Dec. No. UCFE58-2517-32, Aug. 22, 1958, 5 CCH, Unemp. Ins. Rep. (Mich.) par. 1970.206; Hawaii Ref. Dec. No. R-797, Sept. 10, 1956, 3 CCH, Unemp. Ins. Rep. (Hawaii) par. 1970.20; Hawaii Ref. Dec. No. 154-61, July 21, 1961, 3 CCH, Unemp. Ins. Rep. (Hawaii) par. 8022.06; Ind. Rev. Bd. Dec. No. 49-R-97, Aug. 12, 1949, 4 CCH, Unemp. Ins. Rep. (Ind.) par. 1950.01.

Minn. 52, 47 N. W. (2d) 449; and Johnson v. LaGrange Shoe Corp. 244 Minn. 354, 70 N. W. (2d) 335.

Whether the separation from employment was a voluntary or involuntary act of the employee must be determined not by the immediate cause or motive for the act but by whether the employee directly or indirectly exercised free will or choice as to the performance or nonperformance of the act bringing on the suspension. Thus if the act causing employment separation was performed by him directly of his own free will, or indirectly by his act of vesting in another discretionary authority to act in his behalf, the ultimate resulting act is a voluntary one which disqualifies him for compensation during suspension. Anson v. Fisher Amusement Corp. *supra*. Thus, this court held in the Bergseth case that claimants, who were retired under a compulsory retirement provision in the collective bargaining agreement between the employer and claimants' union, left voluntarily and without good cause attributable to their employer under § 268.09, subd. 1(1), and therefore were not entitled to benefits.

This rule is predicated on the application of strict principles of contract and agency and is applicable to the case at bar by reason of appellant's having freely and voluntarily accepted the conditions of employment set forth by statute and civil service rules. Thus, regardless of his volition at the time of his suspension, it is his previous assent which governs and he must, therefore, under the cases cited above, be disqualified from benefits.

■ As we view the proceedings had below, the evidence produced at the administrative hearings is sufficient to sustain the decision. Where an appeal is taken from a decision of the commissioner of employment security in proceedings for unemployment benefits, we are limited in our review to determining whether there is reasonable support in the evidence to sustain the decision of the commissioner. Chellson v. State Div. of Employment & Security, 214 Minn. 332, 8 N. W. (2d) 42. His findings will not be disturbed if there is any evidence reasonably tending to sustain them. Hamlin v. The Coolerator Co. 227 Minn. 437, 35 N. W. (2d) 616. This court cannot disturb a determination of the commissioner on the question of eligibility for unemployment compensation merely be-

cause we do not agree with such determination. We will interfere only where he has exceeded his jurisdiction, has proceeded upon an erroneous theory of law, or where his action is arbitrary, oppressive, and unreasonable, or without evidence to support it. Vicker v. Starkey, 265 Minn. 464, 122 N. W. (2d) 169, 97 A. L. R. (2d) 745; Johnson v. Wilson & Co. 266 Minn. 500, 124 N. W. (2d) 496; Olson v. Starkey, 259 Minn. 364, 107 N. W. (2d) 386.

The appeal tribunal, after a hearing at which appellant was given every opportunity to present his case, held that appellant was unemployed through his own fault and was therefore ineligible to receive benefits under the Employment Security Law. The commissioner after a hearing adopted the findings of the appeal tribunal, and since they are supported by the evidence the decision of the commissioner must be affirmed.

Affirmed.