Valentine RAMIREZ, Relator,

v.

METRO WASTE CONTROL COMMISSION, Respondent,

Commissioner of Economic Security, Respondent.

No. C2–83–1147.

Court of Appeals of Minnesota.

Dec. 7, 1983.

Susan E. Conley, Southern Minnesota Reg'l Legal Services, St. Paul, for relator.

Christopher Sitzmann, Minneapolis, for respondent Metro Waste Control Com'n.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent Com'r of Economic Sec.

## OPINION

SEDGWICK, Judge.

At the request of claimant, Valentine Ramirez, certiorari was granted to review the decision of the representative of the Commissioner of Economic Security denying Ramirez unemployment compensation benefits under Minn.Stat. Sec. 268.09, subd. 1 (1982). The issue in this case is whether the evidence reasonably tends to support the decision of the commissioner's representative. The commissioner's representative found that claimant was disqualified from receiving unemployment benefits under Minn. Stat. Sec. 268.09, subd. 1(1) because he voluntarily resigned his position before his employer, Metro Waste Control Commission (Metro Waste), had made a final decision or taken final action regarding claimant's potential discharge for repeated tardiness. We affirm.

Claimant was employed by respondent Metro Waste, a governmental agency, from June 6, 1978 to October 28, 1982 as a Building Operator II. At the conclusion of his employment, claimant worked the 11 p.m. to 7 a.m. shift. Metro Waste had a valid labor agreement with the International Union of Operating Engineers Local No. 35 which covered claimant's employment.

On May 13, 1982, Metro Waste's plant manager issued a letter to claimant stating that claimant had been tardy for work five times since January 1, 1982. The letter indicated that according to a labor agreement, claimant should have been discharged for his tardiness on May 13, 1982, but because he had apparently not received a warning letter previous to this incident, he would be given another chance.

On October 25, 1982, claimant was late for work by seven or eight minutes. On October 26, 1982, claimant was informed that he was indefinitely suspended pending an investigation of his tardiness on the previous day. On October 26 or 27, the plant manager told the claimant that he was seeking the claimant's discharge from employment. Although claimant was aware that the plant manager did not have direct authority to discharge him, he believed, based on past actions of the employer, that the plant manager's recommendation would be followed.

On October 28, 1982, claimant decided "[T]o separate, to leave Metro Waste Control with, not a discharge but with a resignation so that it wouldn't look bad, I repeat, so that it wouldn't look bad on my work record." According to his superiors, if claimant had not resigned, it was likely that he would have been discharged for his tardiness. By submitting his resignation in order to protect his work record, claimant relinquished his right to pursue any available remedies under the collective bargaining agreement or under civil service.

◼ In reviewing decisions of the Commissioner of Economic Security, a reviewing court's scope of review is limited to a consideration of:

> [W]hether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable that it represents its will and not its judgment; or whether the decision of the department is without evidence to support it.

*Johnson v. Wilson & Co.,* 266 Minn. 500, 507, 124 N.W.2d 496, 501 (1963); *Lumpkin v.*

*North Central Airlines, Inc.,* 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973).

Claimant contends that the commissioner's representative must use the same standard for review of appeal tribunal decisions as an appellate court uses to review decisions of trial courts. The Minnesota Supreme Court specifically rejected this argument in *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 462, 209 N.W.2d 397, 401 (1973):

> Normally an appellate court is not empowered to make or modify findings of fact and is thereby limited in its scope of review. Thus, if a trial court has improperly weighed the facts, the appellate court must remand to the trial court for further consideration. In unemployment compensation cases, however, the legislature empowered the commissioner to modify or set aside any findings of fact or decision on the basis of the evidence in the record. The commissioner is implicitly empowered to consider and weigh the evidence in the case, apply the correct law, and render his decision accordingly. Where the commissioner by statute has the authority to so review the case, there would be little purpose in remanding the case to the tribunal for a reweighing of the evidence at that level.

296 Minn. at 462, 209 N.W.2d at 401. *See also Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181, 183 (Minn. 1977); *Chellson v. State Division of Employment and Security,* 214 Minn. 332, 335, 8 N.W.2d 42, 43 (1943).

The basic issue of this case is whether the evidence reasonably tends to support the commissioner's findings and decision that claimant voluntarily terminated his employment. The commissioner's representative applied the following holding of *Board of County Commissioners v. Florida Dept. of Commerce,* 370 So.2d 1209 (Fla.App.1979) in finding that claimant voluntarily terminated his employment:

> When an employee, in the face of allegations of misconduct, chooses to leave his employment rather than exercise his right to have the allegations determined,

such action supports a finding that the employee voluntarily left his job without good cause.

370 So.2d at 1211.

Minn.Stat. Sec. 268.09, subd. 1(1) (1982) provides that an individual is disqualified from receiving unemployment compensation benefits when "the individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer." The general policy of this state has been that unemployment compensation benefits are extended and confined to persons unemployed through no fault of their own. *Kitchen v. G.R. Herberger's Inc.,* 262 Minn. 135, 140, 114 N.W.2d 64, 68 (1962). To be found "at fault," an employee must engage in "some act" "at least acquiescing in the unemployment." *Id.* at 140, 114 N.W.2d at 67. In determining whether the employer is at fault for the unemployment, the Minnesota Supreme Court has said: "[T]he fault which governs is the ultimate and final act causing the unemployment rather than any preliminary act which might furnish a motive causing the employment." *Id.*

The Minnesota Supreme Court has often described voluntary unemployment as the exercise of "a free-will choice and control" in terminating the employment. *See Anson v. Fisher Amusement Corp.,* 254 Minn. 93, 98, 93 N.W.2d 815, 819 (1958). In analyzing whether claimant exercised a free-will choice in this case, the evidence shows that claimant was tardy for work a sixth time after being warned this would lead to his discharge. Although claimant was told by his supervisor that it was likely he would be terminated, Metro Waste supervisors testified that a formal decision to discharge claimant had not yet come down through the chain of command by October 28, 1982 when claimant's resignation was tendered and accepted. On one previous occasion, claimant was not discharged for his tardiness as provided for in the labor agreement. Claimant's supervisor testified that he did not tell claimant he was fired and that claimant asked whether he might resign. There is no evidence that Metro Waste

asked for claimant's resignation. When claimant offered his resignation, his supervisor discussed it with his superior before accepting it. Claimant testified that he *chose* to resign to protect his work record from reflecting a discharge.

The commissioner's findings are to be reviewed in the light most favorable to his decision, and where there is evidence reasonably tending to sustain them, the findings should not be disturbed. *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181, 183 (Minn.1977); *White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983). Reviewing the evidence in this record, we find that there is evidence reasonably tending to support the finding of the commissioner's representative that claimant voluntarily discontinued his employment. We also find that the commissioner's representative correctly applied the holding of *Board of County Commissioners v. Florida Dept. of Commerce, supra,* to the facts of this case.

The decision of the representative of the commissioner is hereby affirmed.