**CITY OF MELROSE, Relator,**

**v.**

**Richard L. KLASEN, Department of Jobs and Training, Respondents.**

**No. C1–86–618.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Mark H. Meyer, Meyer, Meyer and Pottratz, Melrose, for City of Melrose.

Keith J. Kerfeld, Mary C. Cade, Rider, Bennett, Egan & Arundel, Minneapolis, for Richard L. Klasen.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

The City of Melrose seeks review of a determination that the respondent, Richard Klasen, is entitled to receive unemployment compensation benefits for a period of disciplinary suspension from work. We affirm.

## FACTS

Richard Klasen was employed by the City of Melrose for many years. On September 10, 1985, Klasen and a co-worker were scheduled to attend an all-day seminar in Lester Prairie, Minnesota, and were given a city-owned automobile for traveling to and from the seminar. After attending the morning session of the seminar, Klasen and his co-worker took a lunch break at a local bar. Klasen began drinking strong beer during the lunch break and, instead of returning to the afternoon session of the seminar, he continued drinking at the bar with his co-worker throughout the afternoon. He consumed approximately five beers.

Upon leaving the bar, Klasen and the co-worker allowed two other persons who had been drinking with them to ride in their automobile, in violation of city policy which prohibits unauthorized passengers in city vehicles. Klasen and the others continued to drink in the car while the co-worker was driving. As Klasen and the co-worker returned to Melrose, they were stopped by a city police officer, and Klasen was given a breath test. The results indicated that his alcohol level was .19 percent.

As a result of this incident, Klasen was suspended with pay until September 23, 1985. On September 19, 1985, Klasen and the city reached an agreement, determining that he would be suspended for 90 days without pay, would be demoted, and would receive a reduction in pay from $10.68 to $9.84 per hour, rather than facing dismissal proceedings. Klasen also agreed to undergo a chemical dependency evaluation, and to submit to any treatment prescribed by a local clinic.

On October 1, 1985, Klasen was diagnosed as an alcoholic, and he thereafter entered an out-patient treatment program for chemical dependency, where he was advised that he should discontinue drinking and attend Alcoholics Anonymous meetings on a regular basis. Klasen has complied

with the directions and instructions of the treatment facility.

Klasen filed a claim for unemployment compensation benefits on September 27, 1985. The claims deputy determined that he was suspended for misconduct and was therefore disqualified from receiving benefits. A department referee reversed, concluding that Klasen had been discharged for his own serious illness of alcoholism, and that he had made reasonable efforts to retain his employment, meeting the requirements of Minn.Stat. § 268.09, subd. 1(b) which excepts such individuals from the normal statutory disqualification provisions. A Commissioner's representative affirmed the referee's decision, and the City of Melrose has appealed by writ of certiorari.

## ISSUE

Did Klasen's choice to accept a disciplinary suspension, rather than face dismissal proceedings, constitute a voluntary termination of employment disqualifying him from the receipt of unemployment compensation benefits?

## ANALYSIS

Although the Commissioner's representative determined that Klasen was discharged for misconduct, he concluded that Klasen's alcoholism excused him from being considered "at fault" for his behavior. The Commissioner's representative therefore determined that Klasen should be allowed to receive unemployment compensation benefits. *See* Minn.Stat. § 268.09, subd. 1(b) (1984). On appeal, the City of Melrose does not dispute the fact that Klasen is an alcoholic and has made reasonable efforts to overcome his problem[1]; rather, the city argues that by accepting a 90–day suspension in lieu of termination proceedings, Klasen voluntarily quit his employment with the city.

---

1. The city's emphasis upon the fact that Klasen was diagnosed as an alcoholic after he was suspended is misplaced. The statutory exception to misconduct requires only that a separation be "due to" alcoholism. Minn.Stat. § 268.09, subd. 1(b).

The legislature has determined that persons who voluntarily resign from their jobs are not entitled to receive unemployment compensation benefits. Minn.Stat. § 268.-09, subd. 1(1) (1984). As the city points out, in applying this provision, we have concluded that one who chooses to resign rather than face disciplinary proceedings has voluntarily quit and is therefore not entitled to receive unemployment compensation benefits. *See Seacrist v. City of Cottage Grove*, 344 N.W.2d 889 (Minn.Ct. App.1984); *Ramirez v. Metro Waste Control Commission*, 340 N.W.2d 355 (Minn. Ct.App.1983). The present situation is distinguishable, however, since Klasen chose to be suspended, not to resign. As the Commissioner's representative noted:

> The employee accepting suspension is not acting to sever the employment relation[ship]; he is, in fact, acting to continue the employment.

The city relies upon language in *Sarja v. Iron Range Resources and Rehabilitation*, 274 Minn. 458, 144 N.W.2d 377 (1966) for the proposition that a person who agrees to a suspension should be disqualified from receiving unemployment compensation benefits under the voluntary quit rule. *Sarja*, however, did not involve a similar situation. There, the employee was not offered a choice between suspension or discharge, but was suspended for alleged misconduct pursuant to civil service rules. The *Sarja* court applied the constructive voluntary quit rule and held that the employee had agreed when he was hired to accept the civil service rules as conditions of his employment; therefore, he had constructively assented to the suspension. It is important to note that since *Sarja*, the legislature and the courts have refused to apply this doctrine. *See* Minn.Stat. § 268.-09, subd. 1(1) ("a separation from employment * * * based solely on a provision in a collective bargaining agreement by which an individual has vested discretionary authority in another to act in behalf of the individual shall not be deemed voluntary"); *Commissioner of the Department of Economic Security v. City of Duluth*, 297 N.W.2d 239 (Minn.1980); *Hendricks · &*

*Lamers Limited v. Vadnais*, 389 N.W.2d 262 (Minn.Ct.App.1986). Thus, there is little reason to rely upon *Sarja*. *See also Jansen v. Peoples Electric Company, Inc.*, 317 N.W.2d 879 (Minn.1982) (court reluctantly applied constructive voluntary quit rule noting criticisms of the doctrine).

By Laws of 1982, 1st Sp. Sess., chap. 1, § 26 several years after *Sarja* was decided in 1966, the legislature added the following language to the unemployment compensation statutes:

> (6) Disciplinary suspensions. An individual shall be disqualified for waiting week credit and benefits for the duration of any disciplinary suspension of 30 days or less resulting from his own misconduct. Disciplinary suspensions of more than 30 days shall constitute a discharge from employment.

Minn.Stat. § 268.09, subd. 1(6) (1984). This language supports the Commissioner's representative's position that Klasen did not voluntarily quit his job with the City of Melrose, since the legislature specifically treats his suspension as a discharge.

■ In *Sarja*, the court stated:

> It would appear inimical to the [unemployment compensation] act to permit an employee to receive benefits while under suspension. Under those conditions a suspension of an employee would have little if any effect upon him, as it would be more like a paid vacation than a disciplinary measure.

*Sarja*, 144 N.W.2d at 380. The legislature addressed this concern by denying benefits during a 30 day (or shorter) suspension resulting from the employee's own misconduct. Since the legislature also stated that a suspension of more than 30 days is treated as a discharge, it must be assumed that an employee on a longer suspension is not entitled to receive unemployment compensation benefits if the suspension is the result of misconduct, but may otherwise receive benefits (*see* Minn.Stat. § 268.09, subd. 1(2)).

■ Here, the Commissioner's representative found that Klasen's conduct would

ordinarily rise to the level of misconduct, but was excused by his alcoholism. Therefore, when treated as a discharge pursuant to Minn.Stat. § 268.09, subd. 1(b), Klasen's suspension cannot be the basis for the denial of unemployment compensation benefits.

### DECISION

Klasen's suspension for more than 30 days, as a result of his alcoholism, entitles him to receive unemployment compensation benefits.

Affirmed.