529 N.W.2d 350 (1995)
Valerie WHITEHEAD, Respondent,
v.
MOONLIGHT NURSING CARE, INC., Relator,
Commissioner of Economic Security, Respondent.
No. CX-94-1943.
Court of Appeals of Minnesota.
March 14, 1995.
*351 Valerie Whitehead, pro se.
Michael J. Minenko, Johnson & Madigan, Minneapolis, for relator.
Kent E. Todd, St. Paul, for respondent.
Considered and decided by NORTON, P.J., and PETERSON, and MANSUR,[*] JJ.

OPINION
NORTON, Judge.
The employer contends respondent is disqualified from receiving re-employment insurance benefits because she failed to accept suitable re-employment. Because respondent did not have the opportunity to accept or reject the offer, she is not disqualified from benefits. We affirm.

FACTS
Relator Moonlight Nursing Care, Inc. (Moonlight) is a temporary employment agency that provides nursing and home healthcare personnel. Respondent Valerie Whitehead is a licensed practical nurse who began working through Moonlight on July 20, 1993.
Whitehead filed a claim for re-employment insurance benefits effective January 30, 1994, because Moonlight had told her it had no work for her. Moonlight called Whitehead on February 4, 1994, to offer her a new assignment, but did not reach her because her phone had been disconnected. Moonlight did not attempt to contact Whitehead again.
The claims representative who initially reviewed the file determined that Whitehead was entitled to benefits because Moonlight had not shown that Whitehead had created her own lack of work. Moonlight appealed that decision to a referee who affirmed the award of benefits, finding that Moonlight had not offered Whitehead re-employment. Moonlight again appealed the decision to a Commissioner's representative who issued amended findings and a decision affirming the award of benefits on the same basis. Moonlight then sought review of this decision by certiorari.

*352 ISSUES
1. Does the record support the Commissioner's determination that Moonlight failed to offer Whitehead re-employment?
2. Does the record support the Commissioner's decision that Whitehead did not voluntarily terminate her employment?
3. Does the record demonstrate that Moonlight involuntarily terminated Whitehead for misconduct so as to disqualify her from benefits?

ANALYSIS
This court employs a narrow standard of review on appeals from the Commissioner of Economic Security and will not disturb the findings of the Commissioner's representative if the record contains evidence that reasonably tends to sustain them. White v. Metropolitan Medical Ctr., 332 N.W.2d 25, 26 (Minn.1983). When the parties have presented conflicting evidence on the record, this court must defer to the Commissioner's ability to weigh the evidence; we may not weigh that evidence on review. Cary v. Custom Coach, Inc., 349 N.W.2d 331, 332 (Minn.App.1984) (citing Nyberg v. R.N. Cardozo & Bro., Inc., 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954)).

1. Offer of Re-employment
Moonlight contends Whitehead should be disqualified from receiving benefits because she refused to accept suitable re-employment. We disagree.
Moonlight has the burden of proving that it made a "definite and express offer of suitable re-employment" to Whitehead. Gonsior v. Alternative Staffing, Inc., 390 N.W.2d 801, 806 (Minn.App.1986), pet. for rev. denied (Minn. Aug. 27, 1986); see also Larson v. Pelican Lake Nursing Home, 353 N.W.2d 647, 649 (Minn.App.1984) (employee entitled to benefits because employer had not given her specific offer of re-employment or opportunity to accept or reject it).
The record supports the determination of the Commissioner's representative that Moonlight never made a definite or express offer of re-employment to Whitehead. Moonlight admits that it called Whitehead only once, on February 4, to offer her a new job assignment. When unable to reach Whitehead, Moonlight ceased trying to find her and admits that it never contacted her personally. Moonlight cannot now accuse Whitehead of refusing to accept an offer she never received. Cf. Gonsior, 390 N.W.2d at 804, 806 (employee disqualified herself from benefits when she quit job without good cause and hung up on employer when it called and offered re-employment); LaSalle Cartage Co. v. Hampton, 362 N.W.2d 337, 340, 342 (Minn.App.1985) (employee disqualified himself from benefits when he failed to accept offer of re-employment according to definite conditions set out in recall letter).
The Commissioner's representative properly determined that Whitehead never received an offer and, thus, was not disqualified from receiving benefits.

2. Voluntary Termination
We are not persuaded by Moonlight's argument that Whitehead voluntarily terminated her employment when she failed to provide Moonlight with her forwarding address and new phone number. See Minn. Stat. § 268.09, subd. 1(a) (1992) (employee who voluntarily ends employment without good cause attributable to employer is not entitled to benefits).
First, by the nature of temporary work, Whitehead's employment with Moonlight ended on January 30 when it failed to give Whitehead a new job assignment. See Smith v. Employers' Overload Co., 314 N.W.2d 220, 223-24 (Minn.1981) (temporary employee's relationship with employer ends at the end of each assignment).
Second, the case upon which Moonlight bases its voluntary termination argument is distinguishable. See Christensen v. Fiberite Corp., 269 N.W.2d 20, 21 (Minn.1978). The laid-off employee there had failed to update his employer with his current address after a four-month lay-off. As a result, the employer received the recall letter returned without delivery. Id. The employer then attempted to contact the employee through his family and another letter to a different address. The Minnesota Supreme Court determined *353 that the employee's conduct prevented the employer from reaching him and placed an undue burden on the employer. Id. For those reasons, the court held that the employee voluntarily terminated his employment when he neglected to update the employer with his current address. Id. at 21-22.
In contrast to Christensen, less than one week passed between the time Moonlight told Whitehead it had no more work and the day it called to reassign her. Moonlight made only one phone call to Whitehead and then ceased efforts to offer her a new assignment. These facts do not raise concern over an "unreasonable burden" on the employer. Id. at 21. On the contrary, Moonlight did not take reasonable steps to extend the offer; Moonlight had Whitehead's address on her application, but sent no letter and made no effort to locate her new phone number.
Moonlight contends, however, that the nature of its business, as a temporary placement agency for health care providers, makes time of the essence and does not afford them extra time to locate employees. Despite the urgency of filling a position on February 4, 1994, Moonlight could have sought out Whitehead on another day. The Commissioner's representative properly concluded that the voluntary termination argument lacked merit.

3. Involuntary Termination
Finally, Moonlight argues Whitehead is disqualified from receiving benefits because it terminated her for misconduct. See Minn.Stat. § 268.09, subd. 1(b) (employee ineligible for benefits if discharged for misconduct). Moonlight's argument has two fatal flaws. First, Moonlight never took any action to terminate Whitehead after any of the three incidents of misconduct it now cites. See Hansen v. C.W. Mears, Inc., 486 N.W.2d 776, 780 (Minn.App.1992) (to disqualify employee from benefits, misconduct must be the cause of discharge), pet. for rev. denied (Minn. July 16, 1992). Second, Moonlight confirmed on the record at the hearing, "[Whitehead] has not been terminated. She's still on our current roster." Moonlight has contradicted itself in raising this argument. The Commissioner's representative properly determined that this issue lacked merit.

DECISION
Whitehead never received an offer that she could have accepted or rejected and, thus, is not disqualified from receiving re-employment insurance benefits on the basis that she refused reemployment.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.