**Phyllis P. ERB, Relator,**

v.

**COMMISSIONER OF ECONOMIC SECURITY, Respondent.**

No. C4-99-967.

Court of Appeals of Minnesota.

Nov. 9, 1999.

Phyllis P. Erb, Eagan, MN (pro se relator).

Kent E. Todd, Minnesota Department of Economic Security, St. Paul, MN (for respondent).

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Relator was the sole owner and manager of a business. Following self-termination of her employment, she sold the business and applied for reemployment insurance benefits. Relator's claim for reemploy- ment benefits was rejected by the representative of the Commissioner of Economic Security. Relator now appeals. We affirm.

## FACTS

Relator Phyllis Erb owned and managed Field Maintenance, Inc. (Field), working full time from March 1991 until August 29, 1997. During this time, Field incurred approximately $300,000 in debts. Relator was advised by her banker and accountant to sell her business to avoid bankruptcy.

On August 29, 1997, relator terminated her employment from Field. On September 2, 1997, relator sold Field to North Start Fleet Services, Inc. (North Star). North Star purchased Field's building, all assets, and retained all employees.

Relator established a reemployment benefits account with the Department of Economic Security in late November 1997. On her benefits application, relator wrote that she was the owner of her business and that the company had been sold. Relator received $331 in weekly benefits from November until May 1998, for a total of $8,606.

In January 1998, after being notified that its experience-rating account was being charged for the benefits paid to relator, North Star protested to the Department of Economic Security. In January 1999, after investigating North Star's protest, the department determined that relator was disqualified from receiving benefits and held that she had been overpaid $8,606 in benefits. Both decisions were affirmed by a reemployment judge and by the representative of the commissioner of economic security.

## ISSUE

Does a business owner's voluntary termination of employment disqualify the owner from reemployment insurance benefits?

## ANALYSIS

■ While this court reviews the commissioner's representative's findings in a light most favorable to the decision, the representative's conclusions of law are not binding on this court. *See Soussi v. Blue & White Service Corp.*, 498 N.W.2d 316, 317–18 (Minn.App.1993).

■ Generally, economic security laws are considered humanitarian in nature, and are liberally construed to effect their remedial purpose. *See, Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn. App.1983). But, such latitude is extended only to fulfill the legislature's intention "to assist those who are involuntarily unemployed through no fault of their own." *Id.* (citations omitted).

■ The commissioner's representative ruled that because relator terminated her own employment, she was not entitled to receive reemployment benefits. The representative relied on the rule that a claimant who voluntarily terminates employment without good cause shall be disqualified from receiving reemployment benefits. "A claimant who quits employment shall be disqualified from benefits." Minn.Stat. § 268.09, subd. 1a (Supp.1997); *see, e.g., Kehoe v. Minnesota Dept. of Econ. Sec.*, 568 N.W.2d 889, 890 (Minn. App.1997) (applying section 268.09, subd. 1a (1996)). "Quit" is defined as "when the decision to end the employment was, at the time the employment ended, the employee's." Minn.Stat. § 268.09, subd. 2a (Supp.1997).

■ To receive benefits, relator must demonstrate that she was involuntarily unemployed. *See Lopez*, 341 N.W.2d at 296. Relator does not contest the fact that she terminated her position. Because relator made the decision to continue her employment no longer, section 268.09 disqualifies her from benefits.

■ After it has been established that an employee is disqualified from receiving benefits, the burden shifts to the employee to overcome the disqualification. *McDonnell v. Anytime Temps.*, 349 N.W.2d 339, 341 (Minn.App.1984). Subdivision 1a provides six exceptions to the voluntary termination provision. Minn.Stat. § 268.09, subd. 1a(1)-(6) (Supp.1997). Relator's appeal correlates only to the first exception, which provides benefits despite voluntary termination if the employee demonstrates "a good reason" for unemployment "caused by the employer." *Id.*, subd. 1a(1).

■ The "good reason" language was adopted in 1997, replacing the prior statutory "good cause" requirement. 1997 Minn. Laws ch. 66, §§ 43, 81. Yet, the terminology is similar enough that we look to previous case law interpreting "good cause" to assist us in applying "good reason." "Good cause" has been defined "as a reason that is substantial, reasonable, and compelling, not imaginary, trifling, or whimsical." *Kehoe*, 568 N.W.2d at 890 (citing *Ferguson v. Dept. of Employment Servs.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976)). The standard for determining good cause is that " 'standard of reasonableness as applied to the average man or woman, and not to the supersensitive.' " *Haskins v. Choice Auto Rental, Inc.*, 558 N.W.2d 507, 511 (Minn.App. 1997) (quoting *Ferguson*, 311 Minn. at 44 n. 5, 247 N.W.2d at 900 n. 5).

While this case is a matter of first impression, instructive reasoning exists in previous cases analyzing "good cause" termination. Courts have focused on the "ultimate and final act" causing unemployment, not preliminary acts that furnish motive. *Ramirez v. Metro Waste Control Comm'n*, 340 N.W.2d 355, 357 (Minn.App. 1983) (quoting *Kitchen v. G.R. Herberger's Inc.*, 262 Minn. 135, 140, 114 N.W.2d 64, 68 (1962)). The *Ramirez* court ruled that a resignation was voluntary when the employee resigned rather than face potential misconduct charges. The court based this ruling on the absence of the employer's actual resignation request. 340 N.W.2d at 357–58; *see also Bongiovanni v. Vanlor Invs.*, 370 N.W.2d 697, 699 (Minn.App.

1985) ("It has been uniformly held in Minnesota * * * that when an employee chooses to leave the employment rather than have the employee's employment status determined by a board or other ultimate discharge authority, it is a voluntary quit without good cause attributable to the employer." (citations omitted)).

Relator suggests the good reason for the loss of her employment is found in the necessity to sell her business in light of the potential for bankruptcy. Simply put, she would not have had to terminate her position absent credit problems. As a matter of policy, relator further argues that she deserves benefits because she paid into the reemployment insurance system for the seven years that she owned and managed the business.

Yet, on the narrow facts of this case, it is undeniable and uncontested that she was in complete control of her employment circumstances. Hence, section 268.09 clearly applies. To hold otherwise would be to ignore the legislative mandate.

■ The ultimate and final act in this case was not the sale of the business or the hypothetical bankruptcy potential, but her own termination of her position. There is no evidence that relator was forced to quit following the sale to North Star, and fear of potential termination does not justify an award of benefits. *See Ramirez*, 340 N.W.2d at 357–58; *Bongiovanni*, 370 N.W.2d at 699.

## DECISION

Absent extenuating circumstances, because appellant voluntarily terminated her own employment she is disqualified from reemployment benefits.

**Affirmed.**