Jennifer L. **ROOTES**, Relator,

v.

**WAL–MART ASSOCIATES, INC., Respondent,**

Commissioner of Employment and Economic Development, Respondent.

No. A03–233.

Court of Appeals of Minnesota.

Sept. 30, 2003.

Amy B. Mohberg, Central Minnesota Legal Services, St. Cloud, MN, for relator.

Wal–Mart Associates, Inc., St. Louis, MO, respondent.

Lee B. Nelson, Philip B. Byrne, Department of Employment and Economic Development, St. Paul, MN, for respondent Commissioner.

Considered and decided by KALITOWSKI, Presiding Judge; TOUSSAINT, Chief Judge; and SCHUMACHER, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

In this certiorari appeal, relator Jennifer L. Rootes challenges a determination by the commissioner's representative that she was disqualified from receiving unemployment benefits. The commissioner's representative found she voluntarily quit her employment with respondent Wal–Mart Associates, Inc. without good reason caused by Wal–Mart. We reverse.

## FACTS

Rootes was a grocery department manager for Wal–Mart. She was employed from November 2000 until May 6, 2002. In February 2002, Wal–Mart warned Rootes that she was not adequately performing her duties. Later that spring, Wal–Mart gave Rootes a "D-day," a paid day off where an employee decides if he or she wants to stay in his or her current position. Rootes chose to retain her position and submitted a plan detailing how she would improve her performance. The plan was accepted, and she was allowed to continue as department manager.

A few months later, Rootes's supervisor informed her she was not adequately performing her job and would need to decide by the end of her shift whether she would resign or accept a lesser position. Rootes left work without speaking to anyone. The next day, Rootes called in sick. At some point following her weekend off, Rootes decided to quit rather than accept the demotion.

Prior to her decision to quit, Rootes worked Monday through Friday from 7 a.m. to 4 p.m. She was paid $11.13 per hour. Rootes was confident that if she accepted a demotion her pay would be decreased, the hours she worked would change considerably, and she would have to work weekends. Rootes never asked for details regarding the effects of demotion. Wal–Mart concedes it likely would have demoted Rootes to a stocking or cashier position, reducing her wages by $1.75 per hour and requiring her to work a different shift, including weekends.

Rootes sought unemployment benefits. An unemployment law judge determined Rootes quit but was eligible for benefits because she quit for good reason caused by Wal–Mart. On appeal, the commissioner's representative concluded Rootes did not quit for a good reason caused by Wal–Mart because an average reasonable person would not quit and become unemployed without first confirming the conditions of her new position. Based on this conclusion, the commissioner's representative determined Rootes was disqualified from receiving unemployment benefits under Minn.Stat. § 268.095, subd. 1(1) (2002).

## ISSUE

Did Rootes quit for good reason caused by her employer?

## ANALYSIS

 Because it is undisputed Rootes voluntarily quit her job, the dispositive issue is whether Rootes quit for good reason caused by Wal–Mart. This is a question of law we review de novo. *Biegner v. Bloomington Chrysler/Plymouth, Inc.*, 426 N.W.2d 483, 485 (Minn.App.1988).

When an employee voluntarily quits, the employee is entitled to unemployment benefits if the decision to quit is the result of a good reason caused by the employer. Minn.Stat. § 268.095 subd. 1(1) (2002). A good reason to quit is one "directly related to the employment ... for which the employer is responsible" and must be significant enough to "compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." Minn.Stat. § 268.095, subd. 3(a)(1), (2) (2002).

What constitutes good reason caused by the employer is defined exclusively by statute. Minn.Stat. § 268.095, subd. 3(f) (2002). The legislature has determined an average, reasonable worker has good reason to quit when faced with substantial adverse changes in wages, hours or other terms of employment. *See id.*, subd. 3(c) (2002) (stating "substantial adverse change in the wages, hours, or other terms of employment by the employer

*shall* be considered a good reason caused by the employer for quitting unless the change occurred because of the applicant's employment misconduct") (emphasis added). The rules of statutory construction state "shall" is mandatory. Minn.Stat. § 645.44 subd. 16 (2002).

▪ Thus, the legislature has unambiguously provided that, absent employee misconduct, an employee may quit for good reason caused by the employer if there was a substantial adverse change in wages, hours or other terms of employment. "When the language of a statute is plain and unambiguous, it ... must be given effect." *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001). Here, Wal–Mart and respondent Commissioner of Employment and Economic Development made no claim that Rootes committed employee misconduct. The sole question is whether Rootes's demotion would have resulted in substantial changes under Minn.Stat. § 268.095, subd. 3(c).

Substantial is defined as "considerable in importance, value, degree, amount, or extent." *The American Heritage Dictionary* 1354 (3d ed.2000). The supreme court, addressing whether an employer's wage reduction was sufficient to create a lockout and therefore allow employees to collect unemployment benefits, approved of other jurisdictions that found a wage reduction of 20–25% was good cause to quit, but a reduction of less than 15% was not. *Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80, 84 (Minn.1981). Although *Sunstar* focused on the earlier statutory language "good cause," that language is similar to "good reason," and therefore we consider it in interpreting good reason. *See Erb v. Comm'r of Econ. Sec.,* 601 N.W.2d 716, 718 (Minn.App.1999).

This court has found a 19% reduction in wage is a good reason to quit. *Danielson Mobil, Inc. v. Johnson,* 394 N.W.2d 251, 253 (Minn.App.1986). A 10% reduction in wages, however, is not good reason to quit. *Dachel v. Ortho Met, Inc.,* 528 N.W.2d 268, 270 (Minn.App.1995).

Here, Rootes knew that the demotion would result in reduced wages, changed hours, and weekend shifts. Rootes's supervisor acknowledged the difference in pay "was very important" to Rootes. Furthermore, while Rootes may not have known the exact amount of the wage reduction, she testified she quit because the wage reduction was amplified by a considerable change in hours. The wage reduction when combined with the change in hours is substantial. We conclude Rootes quit for good reason caused by Wal–Mart pursuant to Minn.Stat. § 268.095, subd. 3(c), and is not disqualified from receiving benefits under Minn.Stat. § 268.095, subd. 1(1).

Because we hold that Rootes quit for good reason caused by Wal–Mart, we do not address Rootes's alternative argument that this case should be remanded because the unemployment law judge failed to properly develop the facts.

## DECISION

Rootes had good reason to quit caused by Wal–Mart. She is not disqualified from receiving benefits under Minn.Stat. § 268.095, subd. 1(1) (2002). We reverse the decision of the commissioner's representative.

**Reversed.**