Judy A. JOHNSON, Relator,

v.

WALCH & WALCH, INC., Respondent,

Commissioner of Employment and
Economic Development,
Respondent.

No. A04–1451.

Court of Appeals of Minnesota.

May 24, 2005.

Petition for Review Denied July 19, 2005.

Peter B. Knapp, Eric P. Hockman (certified student attorney), William Mitchell Law Clinic, St. Paul, MN, for relator.

Lee B. Nelson, Linda A. Holmes, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent commissioner.

Considered and decided by RANDALL, Presiding Judge; WILLIS, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Relator challenges the decision by the commissioner's representative that she is not entitled to unemployment benefits. Because there was substantial evidence to support the representative's decision and because relator's claim that she would suffer a substantial loss of income was speculative, we affirm.

## FACTS

Relator Judy Johnson worked as a hair stylist for respondent Walch & Walch, Inc. (Walch) at its shop in Apache Plaza. She had worked in the same location since 1966. Although she was paid entirely on a commission basis and set her own hours,

she was considered an employee, not an independent contractor. Johnson worked approximately 25 hours a week and her earnings averaged approximately $16 per hour.

Apache Plaza closed. As a result, Walch lost its lease and that business location. In anticipation of closing, the president of Walch visited the Apache Plaza shop and told Johnson that she could work at Walch's Brooklyn Center location. The Brooklyn Center location is about an eight-minute drive by freeway from Apache Plaza. Walch's president testified that Johnson stated she would retire after the Apache Plaza shop closed. Neither party discussed her work situation again.

Johnson testified that her customer base at Apache Plaza consisted of about 75 elderly women, that she had developed this base over 38 years, and that most of her clients lived within one mile of Apache Plaza. Based on her informal poll of a small number of these customers, Johnson concluded that most of her clientele would not travel to the Brooklyn Center location and that she would suffer a dramatic drop in income if she accepted the offer to relocate. Walch's president testified that in his experience approximately 70% of a hairstylist's clients will travel a few minutes to a new location and that there were extra customers and other duties at the Brooklyn Center shop that Johnson could pick up to offset the loss.

After Apache Plaza closed, Johnson ceased working and sought unemployment benefits. A hearing was held before an unemployment law judge (ULJ) who found that Johnson qualified for benefits because she quit her employment for good reason caused by the employer. The decision of the ULJ was appealed to the commissioner's representative. The commissioner's representative found that the evidence presented by Walch was more credible than Johnson's evidence, that in the fall of 2003 Johnson told Walch's president that she planned to retire after the Apache Mall store closed, that continuing employment was available at the Brooklyn Center location, that her claim of dramatic loss of income was speculative, and that Johnson declined the new opportunity without adequately checking the prospects. Based on these findings, the commissioner's representative concluded that Johnson quit without good cause attributable to her employer and denied unemployment benefits.

## ISSUE

Does Johnson qualify for unemployment benefits?

## ANALYSIS

Johnson contends that she had good reason to quit caused by her employer because she would have suffered a substantial loss of income if she moved to the Brooklyn Center location and that the commissioner's representative erred in denying unemployment benefits.

When reviewing a determination of the commissioner's representative, this court considers only whether the record reasonably supports the commissioner's determination. *Tuff v. Knitcraft Corp.,* 526 N.W.2d 50, 51 (Minn.1995). This court views the commissioner's representative's findings in the light most favorable to the decision. *Schmidgall v. FilmTec Corp.,* 644 N.W.2d 801, 804 (Minn.2002). The court defers to the representative's ability to weigh conflicting evidence. *Whitehead v. Moonlight Nursing Care, Inc.,* 529 N.W.2d 350, 352 (Minn.App.1995). We defer to the representative's findings of fact if the record reasonably supports them. *Ress v. Abbott Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989). Whether an employee had good cause to quit is a question of law, which we review de novo.

*Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn.App.2000).

If an employee quits employment because of a good reason caused by the employer, the employee is not disqualified from receiving unemployment benefits. Minn.Stat. § 268.095, subd. 1(1) (Supp. 2003). A good reason caused by the employer is defined as a reason "(1) that is directly related to the employment and for which the employer is responsible; and (2) that is significant and would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (Supp. 2003). Additionally, "[a] substantial adverse change in the wages, hours, or other terms of employment by the employer shall be considered a good reason caused by the employer for quitting[.]" *Id.*, subd. 3(c).[1]

In determining what constitutes a substantial adverse change, Minnesota courts have held that a reduction in wages of between 19 and 25% constitutes a good reason caused by the employer for quitting, but that a reduction of 15% alone does not constitute a good reason. *See Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80, 84–85 (Minn.1981); *Danielson Mobil, Inc. v. Johnson,* 394 N.W.2d 251, 253 (Minn.App.1986). In *Rootes v. Wal–Mart Assocs., Inc.,* we held that a 15% pay reduction, a demotion and less favorable hours constituted a good reason to quit. 669 N.W.2d 416, 418 (Minn.App.2003). The *Rootes* court held that even though

the employee did not know the exact terms of the new employment being offered her, the combination of factors was substantial. *Id.* at 419.

Johnson contends that because she expected to lose a significant number of clients if she moved to the Brooklyn Center location, she would have suffered a substantial adverse change in the terms of her employment, including hours and wages. Johnson bases this conclusion on her belief that her elderly customers would not drive eight minutes to the Brooklyn Center location, that as a commissioned employee, this loss in her customer base would leave her without a steady source of income, and that the employer admitted 30% of her clients would be lost. However, unlike the *Sunstar Foods, Danielson Mobil,* and *Rootes* cases, the evidence of income loss is unclear. Although the president of Walch testified that in his experience, 70% of Johnson's customers would follow her to the Brooklyn Center location, this was not an admission of a 30% income loss. Rather, he testified that there were extra customers at the Brooklyn Center location that Johnson could pick up to replace customers she might lose and that these new customers would allow Johnson to continue to work a similar number of hours and earn a comparable income. He also testified that she told him that she planned to retire.

This appeal presents the following questions: Did Johnson have adequate prospect of continued employment without a

---

**1.** A question was raised whether Johnson should be disqualified from receiving benefits because the Apache Plaza shopping center was demolished and Walch, as a lessee, lost its business involuntarily. If Walch had closed the store and discharged Johnson, she would presumably have been eligible for unemployment benefits. *See* Minn.Stat. § 268.095, subd. 4 (Supp.2003). However, Walch did not discharge Johnson or passively

wait for the demolition crew to destroy the shop. Instead, Walch offered Johnson a job as a hair stylist in another shop eight minutes away. Similarly, the parties did not argue and we do not address the question of whether Johnson's claim for benefits should be rejected because she was not paid a wage, but rather paid on commission, and Walch did not cut her wages.

substantial adverse change in the terms of her employment and was the situation that Johnson faced one that would cause a reasonable person to quit rather than further investigate the opportunity of continued employment? The commissioner's representative accepted the employer's testimony and rejected Johnson's testimony as speculative and unpersuasive. The commissioner's representative also found that Johnson never told Walch of her concerns about loss of income, that this deprived the employer of an opportunity to find a solution, and that quitting entirely and applying for unemployment benefits did not "make sense." We conclude that the employer's evidence of continued employment and earnings at a nearby location constitutes an adequate factual basis to support the decision of the commissioner's representative.

Johnson also argues that her situation is like *Rootes* where the employee did not have to inquire into the terms of her new employment. *See* 669 N.W.2d at 419. In *Rootes*, the employee did not have to inquire because she knew she was being demoted, her pay reduced and her hours changed and because her employer acknowledged these changes. *Id.* While the decision in *Rootes* supports the proposition that good reason to quit employment may exist even if an employee does not inquire as to the exact nature of the adverse change in employment, in that case there was uncontroverted evidence of a substantial, adverse change in the terms of employment, not just an apprehension of such a change. *See id.* Unlike *Rootes*, where the change in income was clear, here it was not. Although Johnson was not given any assurance of her new income level, her conclusion was speculative.

We conclude that it was not an abuse of discretion for the commissioner's representative to determine that Johnson's concern about loss of income was based on speculation and that the commissioner's representative did not err in determining that Johnson should have sought more information from Walch or tried working at the alternative location rather than quitting.

## DECISION

Because there is adequate evidence that the replacement employment available to Johnson was on terms substantially equivalent to those under which she had previously worked, the commissioner's representative did not abuse its discretion in determining that Johnson's decision to quit disqualified her from receiving benefits. Johnson's apprehension about loss of income does not constitute a good reason to quit caused by the employer which would allow an employee to receive unemployment benefits under Minn.Stat. § 268.095, subd. 1, 3 (Supp.2003). In the circumstances of this case, before quitting, Johnson should have sought more information from the employer about the replacement position or tried working at the alternative location.

**Affirmed.**