*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2120**

Athena Vasquez,
Relator,

vs.

Cook Area Health Services, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed July 13, 2015
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 32823615-3

Athena C. Vasquez, Bigfork, Minnesota (pro se relator)

Cook Area Health Services, Inc., Cook, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

This certiorari appeal is from an unemployment-law judge's decision that relator is ineligible for unemployment benefits because she quit her employment without a good reason caused by the employer. We affirm.

**FACTS**

Relator Athena Vasquez worked as a clinical assistant for respondent-employer Cook Area Health Services, Inc. While at work in July 2014, relator told a doctor about an emergency-room patient who had chest pains. The doctor responded rudely to relator, and a nurse who was nearby commented on the doctor's rudeness. Relator agreed with the nurse and used a profane, derogatory term to describe the doctor.

Doctors talked to the employer's site manager about the incident, and on July 28, 2014, the site manager met with relator. Relator admitted using a profane, derogatory term to describe the doctor, and the site manager told her that her behavior was unacceptable and grounds for termination. The site manager told relator that during the next couple of days, she would be under review by the site manager, doctors, and the employer's chief executive officer and that in addition to the unacceptable description of the doctor, relator's past performance, performance reviews, and medication errors would be considered.

Relator asked about the possibility of resigning in order to avoid the review process and leave her employment in good standing with a letter of recommendation, and the site manager agreed to that option. Relator and the site manager agreed that August

2

1, 2014, would be relator's last day of work, and on August 1, relator submitted a letter of resignation effective that day.

Respondent Minnesota Department of Employment and Economic Development denied relator's request for unemployment benefits. Relator appealed, and following an evidentiary hearing, an unemployment-law judge (ULJ) determined that relator was ineligible for benefits because she quit her employment without a good reason caused by the employer. The ULJ affirmed this determination on reconsideration. This certiorari appeal followed.

## D E C I S I O N

We review a ULJ's decision to determine whether a party's substantial rights may have been prejudiced because the ULJ's findings, inferences, conclusions, or decision are not supported by substantial record evidence or are affected by an error of law or procedure. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014). We review the ULJ's findings of fact in the light most favorable to the decision and will not disturb the findings if the record substantially supports them. *Stassen v. Lone Mountain Truck Leasing, LLC,* 814 N.W.2d 25, 31 (Minn. App. 2012).

Under the Minnesota Unemployment Insurance Law, an employee who quits employment is ineligible for unemployment benefits unless a statutory exception to ineligibility applies. Minn. Stat. § 268.095, subd. 1 (2014). "A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). A statutory exception applies when the

3

employee quit the employment because of a good reason caused by the employer. *Id.*, subd. 1(1) (2014). The statute states:

> (a) A good reason caused by the employer for quitting is a reason:
> (1) that is directly related to the employment and for which the employer is responsible;
> (2) that is adverse to the worker; and
> (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.
>
> . . . .
>
> (e) Notification of discharge in the future, including a layoff because of lack of work, is not considered a good reason caused by the employer for quitting.

*Id.*, subd. 3 (2014).

In *Ramirez v. Metro Waste Control Comm'n*, a supervisor told an employee that the plant manager was seeking to have the employee discharged, and, in order to protect his work record, the employee decided to resign before there was a formal decision to discharge him. 340 N.W.2d 355, 356 (Minn. App. 1983). This court affirmed the ULJ's finding that the employee voluntarily terminated his employment by resigning and the ULJ's conclusion that the employee left his job without good cause attributable to the employer. *Id.* at 357-58. Similarly, in *Seacrist v. City of Cottage Grove,* this court affirmed the ULJ's determination that a police officer voluntarily quit employment and was ineligible for unemployment benefits when, in order to protect his work record, the officer resigned before the employer took action to terminate his employment. 344 N.W.2d 889, 892 (Minn. App. 1984).

4

Relator argues that her decision to quit was caused by the employer because the site manager made her feel that she was definitely going to be fired if she did not quit. The reason an employee quit is a factual question for the ULJ to determine. *See Beyer v. Heavy Duty Air, Inc.,* 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing determination of reason for quit as a factual finding). But whether relator had good reason to quit is a question of law, which this court reviews de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.,* 614 N.W.2d 750, 752 (Minn. App. 2000).

The ULJ found that relator "quit because she thought she would be terminated and because she wanted to leave in good standing with a letter of recommendation." The record substantially supports this finding. Under Minn. Stat. § 268.095, subds. 2(b), 3(e), notification of discharge in the future is not considered a good reason caused by the employer for quitting. Thus, quitting because relator knew that she was about to be discharged was not quitting because of a good reason caused by the employer. And under *Ramirez* and *Seacrist*, an employee faced with a possible discharge who quits employment to protect the employee's work record is ineligible for unemployment benefits. Thus, quitting because she wanted to leave in good standing with a letter of recommendation made relator ineligible for unemployment benefits.

Relator argues that the site manager's testimony lacked credibility because there were inconsistencies between his testimony and other information that he provided to the department. Relator cites a statement that "no one told [relator] she would be fired" as inconsistent with testimony that there were "certainly grounds for termination," and "[w]e could probably have fired her on the spot." The statement and testimony were not

5

inconsistent. When the employer never made a decision to fire relator, it is not inconsistent to say that there were grounds for firing relator and to also say that no one told relator that she would be fired.

Relator also argues that the site manager's statement that "[relator] became less able to handle the stress of work, to the point it was dangerous to the patients" was inconsistent with the site manager's testimony that relator was a "strong employee." When testifying, the site manager explained that relator was not a good fit for a medical clinic due to her anxiety and inability to handle stress but that she had "a lot of great attributes" that would make her a good fit for other employers. The general statement that relator was a strong employee was not inconsistent with the statement that relator was less able to handle some of the requirements of her job. Even a strong employee can have difficulty handling some parts of a job. Furthermore, even if the site manager's statements were inconsistent, we defer to the ULJ's evaluations of conflicting evidence and witness credibility. *Lamah v. Doherty Emp't Grp., Inc.,* 737 N.W.2d 595, 598 (Minn. App. 2007).

**Affirmed.**