**Sherriann PEPPI, Relator,**

v.

**PHYLLIS WHEATLEY COMMUNITY CENTER, Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C6–00–251.**

Court of Appeals of Minnesota.

July 25, 2000.

Lori Peterson, Tracy N. Tool, Lori Peterson & Associates, Minneapolis, for relator.

David C. Weinstein, Meagher & Geer, P.L.L.P., Minneapolis, for respondent-employer.

Kent E. Todd, St. Paul, for respondent-commissioner.

Considered and decided by HARTEN, Presiding Judge, SCHUMACHER, Judge, and SHUMAKER Judge.

## OPINION

SHUMAKER, Judge.

Relator complained to her supervisor that she was being sexually harassed in the workplace by a co-worker. The supervisor informed her that management would leave it up to her as to whether or not the complaint should be investigated. Relator then quit her job and the commissioner of economic security determined that she was ineligible for reemployment compensation benefits because she quit without good reason caused by her employer. Relator contends on certiorari review that her employer's failure to investigate her complaint was good reason that caused her to quit her job.

## FACTS

Relator Sheriann Peppi worked as a pre-school teacher for respondent Phyllis Wheatley Community Center. In February 1999, Peppi received anonymous letters and a telephone call at work inviting her to engage in a lesbian sexual encounter. Peppi showed the letters to an associate director of the center who offered to remind all employees of the center's sexual harassment policy. Peppi asked her not to do that.

In March and April 1999, a co-worker made sexual remarks and gestures to Peppi and told Peppi that she dreamed of her. When the associate director inquired of Peppi how things were going during this time period, Peppi said there were no problems.

In May 1999, the co-worker repeated to Peppi passages from the anonymous letters. It was then that Peppi was able to identify the co-worker as the author of the letters.

On July 27, 1999, Peppi complained of the co-worker's sexual harassment to one of the community center's supervisors.

The supervisor said that she would discuss the complaint at a management meeting.

The supervisor met with the center's directors and a human resources consultant on July 30, 1999. On August 3, 1999, the supervisor told Peppi that management had decided to open a file on the complaint but that it was up to Peppi to decide whether the matter should be investigated further. Peppi said she was disappointed with the response but she did not request a further investigation. The community center's harassment policy in effect at the time of Peppi's complaint stated that the center "will investigate reports of harassment and take prompt and appropriate corrective action."

On August 20, 1999, the co-worker left a note with Peppi requesting that they meet. Peppi did not want to meet with the co-worker alone and she asked her supervisor to attend. The supervisor initially declined, but then agreed to attend. Peppi was upset, decided not to meet with the co-worker, and left work early. She called in sick the next day and resigned on August 24, 1999.

After a hearing on Peppi's application for reemployment benefits, a compensation judge determined that she was disqualified because she quit her job without good reason caused by her employer. A commissioner's representative affirmed.

## ISSUE

■ An employee complained to the employer of workplace sexual harassment by a co-worker. The employer deferred to the employee the decision of whether to investigate the complaint. The employee then quit. Did the employee have good reason caused by the employer for quitting?

## ANALYSIS

■ When reviewing a decision by the commissioner's representative, we are to use a narrow standard of review and accept findings of fact if the evidence rea-sonably tends to sustain them. *White v. Metropolitan Med. Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). The issue of whether an employee had good reason to quit is a question of law reviewed de novo. *Biegner v. Bloomington Chrysler/Plymouth, Inc.*, 426 N.W.2d 483, 485 (Minn.App.1988).

Applicants who quit employment because of a good reason caused by the employer shall not be disqualified from benefits. Minn.Stat. § 268.095, subd. 1(1) (Supp.1999). A good reason caused by the employer is one "that is directly related to the employment and for which the employer is responsible" and "is significant and would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." Minn.Stat. § 268.095, subd. 3(a)(1–2) (Supp.1999).

Considering cases of sexual harassment, the legislature has declared that

[a]n applicant has a good reason caused by the employer for quitting *if it results from sexual harassment of which the employer was aware, or should have been aware, and the employer failed to take timely and appropriate action.* Sexual harassment means unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other conduct or communication of a sexual nature when: * * * the conduct or communication has the purpose or effect of substantially interfering with an applicant's work performance or creating an intimidating, hostile, or offensive working environment.

Minn.Stat. § 268.095, subd. 3(e) (Supp. 1999) (emphasis added).

■ When an employee properly complains to an appropriate person of sexual harassment in the workplace, the employer must investigate the complaint and may not defer that decision to the complaining employee: "[A]n employer has an affirmative duty to investigate complaints of sexual harassment and deal appropriately with the offending personnel." *Gillson*

*v. State Dep't of Natural Resources,* 492 N.W.2d 835, 841 (Minn.App.1992) (citations omitted), *review denied* (Minn. Jan. 28, 1993). This duty is augmented here by the community center's written policy requiring an investigation of any complaint of sexual harassment.

At least by July 30, 1999, Peppi had made an apparently good-faith complaint to a supervisor of sexual harassment by an identified co-worker. This was sufficient to trigger an affirmative duty by the employer to make a timely and appropriate investigation, irrespective of the complaining employee's opinion as to the need for an investigation. The employer may, however, consider the employee's desires in deciding the manner of the investigation.

## DECISION

Because respondent Phyllis Wheatley Community Center failed to take timely and appropriate action on relator's complaint of sexual harassment, relator had good reason caused by her employer to quit her job, and she is not disqualified from receiving reemployment compensation benefits.

**Reversed**.