*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0371**

Lennis Bentrud,
Relator,

vs.

Robin Drug Corp.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed October 6, 2014
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 29094553-9

Lennis Bentrud, St. Anthony, Minnesota (pro se relator)

Robin Drug Corp., New Brighton, Minnesota (respondent employer)

Lee B. Nelson, Munazza A. Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Reilly, Presiding Judge; Peterson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On certiorari appeal from a determination by an unemployment law judge (ULJ) that relator is ineligible for unemployment benefits, relator argues that the ULJ erred by

determining that she quit employment without good reason caused by the employer. We affirm.

## FACTS

Relator Lennis Bentrud ended her employment at respondent Robin Drug Corp. on December 16, 2011, following an issue with her supervisor, Paul Joy, about unpaid leave. Bentrud established an account with respondent Minnesota Department of Employment and Economic Development (DEED) seeking unemployment benefits. DEED determined that Bentrud was ineligible for benefits because Bentrud did not have a reason to quit that "would cause the average reasonable worker to quit."

Bentrud appealed the determination of ineligibility arguing that she quit "because [she] felt threatened and harassed" after her "supervisor falsified [her] time card and physically came at [her] when [she] asked him about it." A ULJ held a hearing on the matter and determined Bentrud was ineligible for benefits. This determination was reversed on certiorari review because the ULJ lacked statutory authority to conduct hearings and issue orders, and the matter was remanded "for an additional evidentiary hearing, to be conducted by an unemployment law judge who is licensed to practice law." *Bentrud v. Robin Drug Corp.*, No. A12-1092 (Minn. App. Nov. 1, 2012) (order op.).

Another hearing was then held by a different ULJ during which Bentrud and two representatives from Robin Drug's human-resources (HR) department, Nancy Finke and Cindy Mollet, testified. Bentrud alleged that on December 16, 2011, Joy charged at her, acted as though he was going to slap her, and taunted her, telling her "that he could do whatever he wanted to [her]." *Bentrud v. Robin Drug Corp.*, No. A13-0328, 2013 WL

2

6050374, at *1 (Minn. App. Nov. 18, 2013). Bentrud also made several other allegations against Joy, including that he falsified her time card on December 16, 2011, by altering her time off from unpaid to paid, contrary to her intentions, and created a hostile work environment. *Id.*

The ULJ issued written findings of fact and a decision concluding that Bentrud was ineligible for benefits, finding that "Bentrud quit because of perceived harassment and mistreatment at work," and concluded that "[a]n average, reasonable worker would not quit and become unemployed due to the issues that Bentrud experienced with Joy at Robin Drug." *Id.* at *2. The ULJ also concluded that Bentrud did not properly complain to her employer or give the employer an opportunity to address her concerns and therefore did not quit for a good reason caused be her employer. *Id.* Following Bentrud's request for reconsideration, the ULJ affirmed the determination of ineligibility, and Bentrud thereafter brought a certiorari appeal. *Id.*

We reversed the ULJ's determination and remanded with instructions that the ULJ make more detailed "findings of fact and credibility determinations." *Id.* at *6. We listed the necessary findings as "whether Joy behaved inappropriately, whether Bentrud reported that behavior to [HR representative] Samuelson, and whether Samuelson offered to address the accusations," and "a determination of Bentrud's credibility." Such findings were necessary to determine the legal questions of (1) "whether Bentrud's reason 'would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment,'" and (2) "whether Bentrud 'complain[ed] to

3

the employer and [gave] the employer a reasonable opportunity to correct the adverse working conditions.'" *Id.* (citations omitted).

In December 2012, the ULJ held another evidentiary hearing and thereafter issued written findings of fact and a decision, again determining that Bentrud was ineligible for unemployment benefits. The ULJ found that Joy did not threaten, taunt, rush at, put his hands near, or make verbal threats to Bentrud. The ULJ also found that "the first time Bentrud indicated . . . that she wanted her concerns with Joy to be addressed or assistance resolving issues with Joy" was on December 16, 2011, the day that she quit, and that "Bentrud did not complain to human resources or Joy's supervisors and request that the issues be resolved regarding any of [her] concerns." The ULJ further found that Bentrud had not brought up her concerns about Joy's behavior in a phone call regarding her paycheck concern on December 16, 2011, with Joy and company HR representatives and that when Bentrud went to see HR representative Andrea Samuelson later that day, she did not tell Samuelson about Joy's threatening behavior. Rather, she "indicated [that] she was going to quit because of the paycheck issue."

Additionally, the ULJ found that Bentrud's testimony was not credible and that her account of her interactions with Joy on December 16, 2011, was exaggerated "because she was upset." The ULJ found the company's HR representatives to be more credible than Bentrud because they "were direct and clear about what actions Samuelson would have taken if Bentrud had raised concerns about threatening behavior." The ULJ determined that "[t]he preponderance of the evidence shows that . . . Bentrud quit . . . because Joy changed her timecard and therefore paid her for time she wanted to

4

take unpaid leave." The ULJ ultimately concluded that (1) "[a]n average, reasonable worker would not quit and become unemployed due to this issue;" (2) Bentrud had no other reason for quitting, but noted that even if she quit in part due to Joy's behavior before December 16, 2011, she did not allow her employer a reasonable opportunity to correct her concerns; and (3) Bentrud quit without good reason caused by her employer, making her ineligible for unemployment benefits.

Bentrud requested reconsideration, contending that the ULJ's factual findings about her reason for departure were untrue and that the legal conclusions were incorrect. The ULJ affirmed the determination of ineligibility. This certiorari appeal followed.

## D E C I S I O N

We may reverse or modify the ULJ's decision "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision" are, among other reasons, affected by errors of law, arbitrary or capricious, or unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (2014). Substantial evidence "is: (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; and (5) evidence considered in its entirety." *CUP Foods, Inc. v. City of Minneapolis*, 633 N.W.2d 557, 563 (Minn. App. 2001), *review denied* (Minn. Nov. 13, 2001).

An applicant who quits employment is ineligible for unemployment benefits, unless "the applicant quit the employment because of a good reason caused by the employer." Minn. Stat. § 268.095, subd. 1(1) (2012). A good reason to quit caused by an

5

employer "is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2012). However, "[i]f an applicant was subjected to adverse working conditions by the employer, the applicant must complain to the employer and give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2012).

An employee's reason for quitting employment is an issue of fact for the ULJ, and we accept the ULJ's findings "if the evidence reasonably tends to sustain them." *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000). We view the factual findings in the light most favorable to the ULJ's decision, *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 377 (Minn. 1996), and give deference to the ULJ's credibility determinations, *Jenson v. Dep't of Econ. Sec.*, 617 N.W.2d 627, 631 (Minn. App. 2000), *review denied* (Minn. Dec. 20, 2000). Whether the employee's reason for quitting meets the statutory standard of "a good reason caused by the employer" is a legal question, which we review de novo. *Peppi*, 614 N.W.2d at 752.

Bentrud disputes many of the ULJ's factual findings, contending that she quit because of the actions and behavior of her supervisor, not the paycheck issue. During the evidentiary hearing, from which the ULJ made the findings being reviewed here, Bentrud testified that (1) she talked about the paycheck issue with a supervisor who recommended that Bentrud go see HR; (2) she went to see HR representative Samuelson on December

6

16 to explain her interaction with Joy earlier that day, but did not provide Samuelson with the background information about her problems with Joy; and (3) her meeting with Samuelson, where Bentrud wrote her resignation letter, lasted for a total of about ten minutes. Finke testified that Bentrud's conversation with Samuelson was about Bentrud's paycheck only, that there is no record of Bentrud making other complaints about Joy to HR, and that Bentrud's complaints about Joy would have been taken very seriously and resulted in an investigation. Bentrud admits that she did not complain to Joy's supervisor or to HR about Joy's allegedly ongoing offensive behavior.

Bentrud also contends that she is more credible than the HR representatives that testified because they did not have firsthand knowledge of the relevant events. But a ULJ may receive any evidence with probative value, including hearsay and testimony from witnesses without firsthand knowledge of the evidence. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006). And the ULJ set out the reasoning for discrediting Bentrud's testimony, assessing that Bentrud was "overly sensitive about her interactions with Joy and exaggerated the December 16, 2011 conversation because she was upset." *See* 2014 Minn. Laws. ch. 251, art 2, § 15, at 862 (to be codified at Minn. Stat. § 268.105, subd. 1(d) (2014)) ("When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony.").[1] The evidence Bentrud

---

[1] The quoted session law amended Minn. Stat. § 268.105, subd. 1(c) (2012). The amendment changed the lettering of the paragraphs in subdivision 1 and made nonsubstantive changes to the wording of the former paragraph (c). *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012) (providing that when an amendment clarifies

presented establishes that she had a tense relationship with Joy, which could have led to oversensitivity as to their interactions. Moreover, the ULJ found credible the HR representatives' testimony that action would have been taken on Bentrud's complaints had she lodged them with Samuelson. Bentrud testified and reiterates on appeal that Samuelson was empathetic when they met, suggesting that she would have taken action had Bentrud reported Joy's behavior. Because there is evidence to support the ULJ's determination that the HR representatives' testimony was more credible than Bentrud's testimony as to what Bentrud told Samuelson on December 16, 2011, we defer to the ULJ's credibility determination. *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014) (providing that we give deference to the ULJ's credibility determinations), *review denied* (Minn. July 15, 2014). In light of this credibility determination, the evidence reasonably tends to sustain the ULJ's findings that Bentrud did not report Joy's actions as a basis for her quitting and that she quit her job because of the issue with her paycheck.

Bentrud admits that no harm came to her by receiving payment for her time off, as opposed to taking the time off unpaid, though she complained that Joy "falsified" her timecard. Additionally, the evidence established that Bentrud would still be able to take unpaid time off at a future date, if she so chose. Based on these facts, we conclude that a reasonable, average worker would not quit employment in favor of unemployment where the alteration to her timecard resulted in her receiving more pay than anticipated. Joy's

a law without substantively changing it, the amended statute applies to pending litigation).

alteration to Bentrud's timecard does not constitute a good reason to quit caused by Bentrud's employer. The ULJ did not err by determining that Bentrud quit without good reason caused by her employer and is therefore ineligible for unemployment benefits.

**Affirmed.**