*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0469**

Barbara Jackson,
Relator,

vs.

Direct Home Health Care, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 12, 2015
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 31801497-3

Craig A. Brandt, Snyder & Brandt, P.A., Minneapolis, Minnesota (for relator)

Direct Home Health Care, Inc., San Dimas, California (respondent employer)

Lee B. Nelson, Munazza Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**UNPUBLISHED OPINION**

**REYES**, Judge

Relator Barbara Jackson challenges the determination of the unemployment-law judge (ULJ) that she is ineligible for unemployment benefits because she quit her employment without a good reason caused by the employer. Relator also argues that the ULJ failed to apply the specific definition of "quit" for employees of a staffing service to relator's case and failed to develop the record. We affirm.

## FACTS

Respondent Direct Home Health Care Inc. (DHH) employed relator as a part-time personal care assistant (PCA) from October 2011 to July 5, 2013. During this time, relator was also employed at Resource, Inc. (Resource). Relator worked 20 hours a week doing housekeeping work at Resource and worked about 12 hours a week at DHH providing personal care services to client W.S. After W.S. underwent hip surgery, W.S.'s needs for care changed significantly. W.S. had difficulty walking, required lifting, and needed assistance getting to and from physical therapy. Relator could not lift W.S., and she was unable to transport W.S. to therapy since the hours W.S. attended therapy conflicted with the hours of her employment at Resource. Relator felt she could no longer provide effective care for W.S. after W.S.'s surgery.

On July 9, 2013, relator wrote a letter to DHH stating, "Please note that my last date of work will be [July] 15, 2013 as I am unable to work for [W.S.]" At the top of the letter, relator wrote "Notice of Quit." This letter was given to DHH supervisor Cynthia Alvarez. Relator also completed a pre-printed DHH form entitled, "Voluntarily [sic]

2

Resignation form." In this form, relator filled in the blanks stating that she was resigning from her current position effective July 15, 2013, because she was "unable to do an effective job." The form was signed by both relator and Alvarez. Relator did not inform Alvarez that she had trouble lifting W.S.

Relator continued working at her other job with Resource until she was discharged on August 6, 2013 for reasons other than employment misconduct. The following day, relator applied for unemployment benefits over the phone with the assistance of an employee from the unemployment office. In a checked box, the application indicated that the reason for relator's separation from her employment with DHH was because she "quit" to "accept another job."

As part of the application process, relator was also required to fill out a questionnaire regarding her employment at DHH. In her answer to the question, "What reason for quitting did you give your employer," relator wrote "unable to do 3 [hours] a day because of 4 [hours] on job at [Resource]." Respondent Department of Employment and Economic Development (DEED) determined that relator was ineligible for unemployment benefits because relator did not quit DHH for a good reason caused by the employer.

Relator appealed the determination, and the ULJ conducted an evidentiary hearing. Alvarez testified at the hearing that she was the person who received relator's letter entitled "Notice of Quit," and that relator explained she was providing the notice because "she wasn't able to do an effective job." Alvarez testified that relator did not ask to be assigned to a new client, nor was she made aware that relator wanted to work with

3

another client. Alvarez testified that, although she understood that relator was "quitting that client," she was never asked by relator or anyone else to put relator on the waiting list for a new client. Alvarez was the person at DHH who oversaw this process. Alvarez testified that, in her opinion, relator was the one who chose to end her employment at DHH.

Relator testified at the hearing that on or around the day she brought in her letter, she spoke to Alvarez's supervisor, Abdul, about getting a new client. Relator testified, "Abdul said if I can get a client, we'll take down the client, I would be able to work." Relator stated that at that time, Abdul instructed relator to make sure Alvarez knew relator needed a client. Relator testified, "I told him yes because I thought I did, I guess I didn't tell her. I really don't know." Relator did not inform Abdul that she had trouble lifting W.S.

When the ULJ asked relator why she provided DHH with a quit notice, relator responded that she did not believe the notice indicated she was quitting DHH, but instead, only that she was quitting the client. Relator explained:

> My main objective was just to allow [Alvarez] and them to know that I wasn't going to be working for [W.S.] anymore. Not that I wasn't going to work for Direct Home Care anymore, just for [W.S.] then that's what I said. I didn't know exactly how to do it but I wanted to do it the right way to let them know.

Relator also denied stating that she "quit" her employment with DHH on her application for unemployment benefits. The record shows that relator completed that portion of her application over the phone with the assistance of a DEED employee.

4

Relator testified that she did not provide the DEED employee with any information, nor did the DEED employee ask any questions regarding her employment at DHH. Relator explained that she only applied for unemployment benefits relating to her discharge from Resource.

At the conclusion of the hearing, the ULJ made the application part of the record. The ULJ commented that it was likely that relator was asked to provide information about her employment at DHH since that information was relevant to her eligibility for unemployment benefits. The ULJ explained, however, that she would leave the record open after the hearing, and the parties would have an opportunity to submit written objections to the ULJ's consideration of the application in her determination. The record does not contain any written objections submitted by either party following the hearing.

On December 16, 2013, the ULJ issued a decision finding that relator quit her employment with DHH "because the duties were too difficult for her." The ULJ found that relator did not express her concerns to DHH about her inability to work with W.S. before quitting. Additionally, the ULJ found that relator stated she "quit" in her application for unemployment. While relator denies having stated this to the DEED employee, the ULJ did not find this testimony credible because it was inconsistent with other evidence in the record, including the information provided by relator in the questionnaire. Instead, the ULJ found Alvarez's testimony more credible. Finally, the ULJ determined that relator did not quit because of a good reason caused by the employer and, therefore, did not qualify for benefits under the exception provided in Minn. Stat.

§ 268.095, subd. 1 (2014). Relator requested reconsideration, and the ULJ issued an order on February 13, 2014, affirming her decision. This certiorari appeal followed.

## D E C I S I O N

This court reviews a ULJ's decision denying benefits to determine, among other things, whether the findings, inferences, conclusions, or decision are affected by an error of law, are unsupported by substantial evidence in view of the entire record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (2014). The purpose of chapter 268 is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of the benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014).

## I.

Relator argues that she did not quit her employment at DHH. Whether an employee voluntarily quit or was discharged is a question of fact. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012). A ULJ's factual findings are viewed in the light most favorable to the decision being reviewed. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). This court also gives deference to the ULJ's credibility determinations, which are the exclusive province of the ULJ and will not be disturbed on appeal. *Id.* at 345. We will uphold the ULJ's findings of facts when the evidence substantially sustains them. *Id.* at 344. "Substantial evidence" is evidence "a reasonable mind might accept as adequate to support a

6

conclusion." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quotation omitted).

The relevant statute defines both "quit" and "discharge." A quit "occurs when the decision to end the employment was, at the time the employment ended, the employee's." Minn. Stat. § 268.095, subd. 2(a) (2014). A discharge "occurs when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." Minn. Stat. § 268.095, subd. 5(a) (2014).

The ULJ's finding that relator "quit" is supported by substantial evidence in the record. First, relator consistently characterized her separation from DHH as a "quit." In her initial letter to DHH, relator titled the document "Notice of Quit" and indicated that her last day of work would be on July 15. Relator then filled out a form entitled "Voluntarily Resignation Form" which stated that she was resigning from her current position as a PCA. Likewise, the unemployment application stated that relator "quit" due to "other work." While, relator argues that she did not provide this information to the DEED employee, the ULJ did not find this portion of relator's testimony credible since it was inconsistent with the other documents in the record. We defer to the ULJ's determination in this regard. *See*, *e.g., Skarhus*, 721 N.W.2d at 345. Moreover, the ULJ allowed the record to remain open for relator to submit any written objections she had to the additional documents being made part of the record. Relator did not file any written objections.

7

Second, the information provided by relator in the questionnaire supports the ULJ's conclusion that relator "quit" her employment at DHH because it was her decision to end employment. In the questionnaire, relator stated that when her hours were raised on both jobs she had to choose one so she decided to stay with her employment at Resource. The record substantially supports the ULJ's finding that relator "quit" her employment with DHH.

Relator challenges the ULJ's credibility determinations. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). These findings will be upheld if they are supported by substantial evidence. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). Relator argues that the ULJ mistakenly determined that Alvarez's testimony was more credible than relator's testimony even though, according to relator, the two were not conflicting. We are not persuaded. Alvarez provided direct testimony that neither relator nor anyone at DHH informed Alvarez that relator wanted a new client. Although Alvarez admitted that she did not know whether relator talked to Abdul, such testimony does not undercut the ULJ's credibility determination. Moreover, Alvarez is the person at DHH who handles the assignments of new clients. And relator testified that when she talked to Abdul, even Abdul instructed relator to let Alvarez know that she wanted another client. When asked directly by the ULJ whether this occurred, relator responded ambiguously stating, "I told him yes because I thought I did, I guess I didn't tell her. I really don't know." The ULJ

8

discredited relator's testimony and found Alvarez's testimony more credible as it was "straightforward and more plausible" based on findings substantiated by the record.

Relator also argues that she did not "voluntarily quit" but that W.S. was the one that decided relator could not work for W.S. anymore. However, the record shows that relator was the person who brought a letter into DHH notifying them that she wanted to "quit." Furthermore, at the hearing relator testified that W.S. never told her that W.S. did not want her working anymore, only that they both agreed she was not doing an effective job. Similarly, the letter submitted by relator on behalf of W.S. does not support relator's argument. The letter only stated that W.S. was not "satisfied with [relator's] job performance" following W.S.'s surgery. While it may be true that relator was unable to provide effective care for W.S. after the surgery, relator's argument that this decision was made by W.S. is unsupported by the record.

Even if we were to accept relator's claim that W.S. did not want relator to continue working, W.S. is not relator's employer. A discharge "occurs when any words or actions *by an employer* would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." Minn. Stat. § 268.095, subd. 5(a) (2014) (emphasis added). DHH is relator's employer. The record does not establish that there were any words or actions on the part of DHH that would reasonably lead an employee to believe that the employer would no longer allow her to work for them in any capacity. For these reasons, the ULJ did not err by finding that relator quit her employment with DHH.

9

## II.

Relator argues in the alternative that, if there was a finding that she "quit," it was because of a good reason caused by the employer. An employee who quits her employment is ineligible for unemployment benefits unless a statutory exception applies. Minn. Stat. § 268.095, subd. 1 (2014). One exception to ineligibility is when an employee quits for "a good reason caused by the employer." *Id.*, subd. 1(1) (2014). The "good cause" exception applies only when the reason for quitting (1) is directly related to the employment and for which the employer is responsible; (2) is adverse to the [employee]; and (3) is one that would compel an average, reasonable [employee] to quit and become unemployed. *Id.*, subd. 3(a) (2014). This analysis must be applied to the specific facts of each case. *Id.*, subd. 3(b) (2014).

The reason why an individual quits her employment is a fact question for the ULJ to determine. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing determination for the reason the employee quit as a factual question). The ULJ found that the reason relator quit is because the duties were too difficult for her. At the hearing, and in relator's answers to the unemployment benefit application, relator indicated that she could no longer provide effective care for client W.S. Specifically, relator explained that W.S's care needs changed. Relator testified that she was unable to meet those care needs because she could not lift W.S. and she could not help W.S. get to therapy. The reason relator quit, as determined by the ULJ, is substantially supported by the record.

Next, the ULJ examined whether relator quit because of a good reason caused by the employer. The ULJ determined it was not. We agree. Whether the reason the applicant quit qualifies as a good reason to quit caused by the employer is a legal question, which this court reviews de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000). Substantial evidence must support the legal conclusion that an employee quit for a good reason. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006).

Relator's inability to accommodate W.S.'s increased care needs does not constitute a good reason to quit that is caused by the employer. In this case, the reason relator quit is directly related to her employment. Here, relator meets the first prong because she was unable to meet the expanded care needs of W.S. after W.S.'s surgery. This is adverse to relator as she could not fulfill her duties as a PCA for W.S. However, our inquiry does not end there. Even if adverse working conditions exist, an employee must give the employer an opportunity to correct the adverse condition. Minn. Stat. § 268.095, subd. 3(c). Here, relator did not inform anyone at DHH that she was having difficulties with the client or that she was willing to work with other clients. Relator testified that she did not tell Alvarez or Abdul that she had trouble lifting W.S. Relator only provided a general explanation in her notices that she could no longer provide effective care for W.S. As a result, DHH was not given a reasonable opportunity to correct the adverse working condition. The substantial evidence does not support a legal conclusion that relator quit for a good reason caused by DHH.

11

**III.**

For the first time on appeal, relator contends that the ULJ should have applied the definition of "quit" as it relates to employees of a staffing service. A staffing service "is an employer whose business involves employing individuals directly for the purpose of furnishing temporary assignment workers to clients of the staffing service." Minn. Stat. § 268.035, subd. 21d (2014). Relator asserts that DHH is a staffing service. There is nothing in the record to support this. Moreover, relator failed to raise this argument before the ULJ. As such, this argument has been waived as it is not properly before this court for review.[1] *Thiele v. Stich*, 425 N.W.2d 580 (Minn. 1988).

**Affirmed.**

---

[1] In order to apply the definition of "quit," as defined in section 268.095, subdivision 2(d), to an employee of a staffing service, the employee must have been provided, at the time he begins employment, a copy of a document that informs the employee of the definition of quit under section 268.095, subdivision 2(d). Minn. Stat. § 268.095, subd. 2(d) (2014). Relator asserts that the ULJ should have developed the record to determine whether relator was provided this notice from DHH. Because we determined that there is no evidence in the record to establish that DHH is a staffing service, we do not reach the merits of this claim.