*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0554**

Nikita Seras-Nachole Cordes,
Relator,

vs.

Heartland Midwest, LLC - Burger King,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 14, 2015
Affirmed
Larkin, Judge**

Department of Employment and Economic Development
File No. 32844455-4

Nikita Seras-Nachole Cordes, Forest Lake, Minnesota (pro se relator)

Heartland Midwest, LLC, St. Louis, Missouri (respondent)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's (ULJ's) decision that she is ineligible for unemployment benefits. Because the ULJ's decision is supported by substantial evidence and relator has not established a basis to reverse, we affirm.

## FACTS

Relator Nikita Seras-Nachole Cordes applied for unemployment benefits after quitting her job as a shift manager for respondent Heartland Midwest LLC (Heartland), an Illinois-based company that operates several Burger King restaurants in Minnesota. Respondent Minnesota Department of Employment and Economic Development (DEED) determined that Cordes was eligible to receive benefits. Heartland appealed. A ULJ held a three-day telephonic evidentiary hearing regarding Cordes's eligibility and found that the relevant facts are as follows.

On July 27, 2014, Cordes was working as a shift manager at a Heartland restaurant in north St. Paul when two employees made a comment about "cutting off a pickle." Cordes, a transgender woman, approached the employees, demanded to know what they were talking about, and asked if they were making a joke about transgender persons. The employees denied making such a joke.

On August 1, district manager Ed Davis informed Cordes that she was being transferred to a restaurant on St. Paul's eastside. The transfer had been planned for a few weeks. The district manager told Cordes that the manager at the east St. Paul restaurant was impressed with her performance and had requested the transfer. Cordes appeared

pleased and did not object to the transfer. She worked her final shift at the north St. Paul restaurant the next day.

On August 4, Cordes began working at the east St. Paul restaurant. That day, an employee addressed Cordes as "sir" in a sarcastic manner, and Cordes warned the employee not to engage in such conduct. Later, the employee refused to comply with a work instruction from Cordes. On August 7, the employee was fired for insubordination and discriminatory conduct.

On August 5, Cordes was the closing manager. She allowed Monty Fagnan, a nonemployee, to be in the restaurant after hours and in an employee-only area, and she failed to lock the restaurant at closing time. Heartland notified Cordes that she had violated Heartland's closing policies and gave her a disciplinary warning.

On August 12, Cordes called a Heartland hotline and left a message stating that she had been sexually harassed at the north St. Paul restaurant, that she reported the sexual harassment to her manager, and that nothing was done. Two days later, Davis met with Cordes and asked her to describe her reported harassment. Cordes refused to cooperate unless Fagnan was present. Cordes referred to Fagnan as her legal counsel, but Fagnan is not a licensed attorney.[1] Davis ended the meeting and contacted Heartland's human-resources department.

On August 18, representatives from the human-resources department attempted to obtain information from Cordes by phone. Cordes refused to provide information unless Fagnan was present. Afterward, human-resources director Kim Ervin called Cordes, and

_____
[1] Fagnan testified that he is engaged to Cordes.

3

Cordes stated that she would not participate in an investigation unless Fagnan was involved. Ervin told Cordes that the investigation was internal and private and that Fagnan was not allowed to participate. Cordes again refused to provide information. After the phone call, Ervin sent Cordes a letter, inviting her to provide facts regarding her reported harassment and to submit the information by mail, fax, or e-mail. Cordes did not provide any additional information.

On the evening of August 18, Cordes was the closing manager. When she closed the restaurant at 1:00 a.m., she left more than $3,500 unsecured in the cash drawers and office safe. Cordes left a note claiming that she did not have time to inventory and secure the cash because of a computer malfunction earlier in her shift and because she was shorthanded. Heartland issued Cordes a disciplinary warning for her failure to secure the cash.

Throughout the month of August, Michelle Martinez, the manager of the east St. Paul restaurant, received several complaints that Cordes was intimidating and bothering employees. Around August 20, Martinez observed that Cordes had connected her personal computer notepad to a restaurant computer.

On August 22, Davis and Martinez met with Cordes. Ervin participated in the meeting via phone. Davis and Martinez gave Cordes a written disciplinary warning, directing her to stop bothering employees and connecting personal computer devices to the restaurant computer. Shortly after the meeting, Cordes quit, claiming harassment based on gender and sexual orientation and retaliation for complaining about discrimination and harassment.

4

The ULJ determined that Cordes quit her employment without a good reason caused by Heartland, that she is ineligible to receive unemployment benefits, and that she had been overpaid $910 in benefits. Cordes requested reconsideration. The ULJ affirmed the determination. This certiorari appeal follows.

## DECISION

On certiorari review of an eligibility determination, this court may reverse or modify the ULJ's decision

> if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious.

Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). "We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits. And we review findings of fact in the light most favorable to the ULJ's decision and will rely on findings that are substantially supported by the record." *Fay v. Dep't of Emp't & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015) (quotation omitted).

## I.

An applicant who quits employment is ineligible for unemployment benefits, subject to certain exceptions. Minn. Stat. § 268.095, subd. 1 (2014). One such exception is if "the applicant quit the employment because of a good reason caused by the employer." *Id.*, subd. 1(1). A good reason to quit caused by an employer "is a reason:

(1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014).

"If an applicant was subjected to adverse working conditions by the employer, the applicant must complain to the employer and give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting." *Id.*, subd. 3(c) (2014). "An applicant has a good reason caused by the employer for quitting if it results from sexual harassment of which the employer was aware . . . and the employer failed to take timely and appropriate action." *Id.*, subd. 3(f) (2014).

"[T]he reason for an employee's separation [from employment] is a factual determination." *Embaby v. Dep't of Jobs & Training*, 397 N.W.2d 609, 611 (Minn. App. 1986). But whether that reason constitutes a good reason caused by the employer is a legal question, which this court reviews de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000).

The primary issue in this appeal is whether Cordes quit because of a good reason caused by Heartland. In making that determination, the ULJ acknowledged Cordes's testimony that she quit because of discrimination, harassment, and retaliation. But the ULJ concluded that Cordes, "by refusing to cooperate, hindered the investigation and did not give [Heartland] a reasonable opportunity to investigate and take remedial action" and that Heartland, "[t]o the extent possible, given [Cordes's] refusal to cooperate, . . .

6

took reasonable and timely action to respond to [Cordes's] complaint." The ULJ also concluded that the record failed to establish retaliation.

Cordes contends that she quit because of "harassment from her peers" and "supervisors." She argues that record evidence contradicts the ULJ's finding that no "supervisory employee engaged personally in harassment or discrimination against [Cordes] based on her protected class status." She asserts that Davis, Martinez, Ervin, and another store manager all "participated in the harassment." Cordes does not provide any citations to the record or otherwise identify record evidence that supports her assertion.

In formal briefs, "[e]ach statement of a material fact shall be accompanied by a reference to the record." Minn. R. Civ. App. P. 128.02, subd. 1(c). Although Cordes filed an informal brief, *see* Minn. R. Civ. App. P. 128.01, subd. 1 (permitting informal briefs), this court generally holds pro se litigants to the same standards as attorneys and requires that they comply with court rules. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). We have reviewed the record without the benefit of citations to the record, and we do not find evidence supporting Cordes's claim that Heartland supervisors harassed her or discriminated against her. However, our review of the record satisfies us that substantial evidence supports the ULJ's findings regarding the reported harassment.

Given those findings, the ULJ did not err by concluding that Cordes did not quit because of a good reason caused by Heartland. Although Cordes complained to Heartland about alleged harassment and discrimination, she did not give Heartland a

7

reasonable opportunity to correct those conditions. Instead, she refused to participate in Heartland's investigation. Heartland attempted to take timely and appropriate action, interviewing Cordes and other employees about the allegations, but Cordes repeatedly refused to provide information regarding her allegations. Under the circumstances, the ULJ did not err by concluding that Cordes did not quit for a good reason caused by her employer. *See* Minn. Stat. § 268.095, subd. 3(c).

## II.

Cordes presents several additional arguments in support of reversal. Each is addressed in turn, and none warrants reversal.

*Credibility Findings*

Cordes argues that the ULJ failed to make necessary credibility findings. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014). This court gives deference to a ULJ's credibility determinations, *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006), and will affirm if "[t]he ULJ's findings are supported by substantial evidence and provide the statutorily required reason for her credibility determination," *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533-34 (Minn. App. 2007).

The ULJ determined that Cordes's testimony was not credible. Cordes argues that the ULJ's reasons for discrediting her testimony "are vague at best and do not provide enough to reasonably credit or discredit testimony." However, the ULJ gave several fact-specific reasons for his credibility determination. The ULJ stated that Cordes's testimony

8

(1) was inconsistent with Heartland's policy against permitting nonemployees in the restaurant after hours, (2) was inconsistent with security video that showed that Cordes did not lock the restaurant doors, (3) was contradicted by Martinez's testimony that she did not authorize Cordes to allow a nonemployee in the restaurant after hours, and (4) was contradicted by Martinez's testimony that Cordes admitted to the violations when she received a disciplinary warning. Cordes does not argue that those reasons are inadequately supported by the record evidence.

Because the ULJ provided adequate reasons for discrediting Cordes's testimony, we do not disturb the ULJ's credibility determination. *See id.* at 533 (rejecting argument that ULJ's credibility determination was lacking because "[t]he ULJ's findings [were] supported by substantial evidence and provide[d] the statutorily required reason for her credibility determination").

*Hearsay Evidence*

Cordes complains that the ULJ "allowed third-party statements of 'employee[s]' produced by Heartland Midwest LLC into evidence, despite [her] protest that she could not cross-examine the supposed writers of the documentation nor inquire as [to] the validity of the statements."

Cordes does not identify the specific statements that she asserts the ULJ should have excluded. But at the evidentiary hearing, Cordes objected to written statements from employees at the east St. Paul restaurant. Cordes stated, "In regards to the statements[,] these people are not present so I really don't have an opportunity to cross examine them. So I'm just wondering how can I attest to the validity of these documents

9

without the people here." The ULJ overruled Cordes's objection, stating, "Hearsay is admissible in these hearings. I will consider that these statements from the employees are hearsay, but I'm [going to] . . . let that go to the weight that I give them rather than their admissibility."

A ULJ "may receive any evidence that possesses probative value, including hearsay, if it is the type of evidence on which reasonable, prudent persons are accustomed to rely in the conduct of their serious affairs." Minn. R. 3310.2922 (2013). Because the employees did not testify at the evidentiary hearing, their statements are hearsay. *See* Minn. R. Evid. 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). However, the statements are signed and dated by the declarants and are the type of evidence on which reasonable persons would customarily rely. *See, e.g.*, *Jenkins v. Am. Express Fin. Corp.*, 721 N.W.2d 286, 288 n.1 (Minn. 2006) (incorporating facts from letter written by third-party who did not testify at administrative hearing despite hearsay-status of letter). The ULJ therefore did not err by receiving the statements.

*Cordes's Evidence*

Cordes assigns error to the ULJ's treatment of her testimony, evidence, and witnesses. She contends that the ULJ "did not give [her] the same opportunity as [Heartland] when presenting testimony" and did not consider, refer to, or rule on all the evidence she presented.

"A hearing to determine qualification for unemployment benefits is an evidence-gathering inquiry." *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010). A ULJ must "ensure that all relevant facts are clearly and fully developed." Minn. R. 3310.2921 (2013). A ULJ "may only use reliable, probative, and substantial evidence as a basis for decision." Minn. R. 3310.2922. "All competent, relevant, and material evidence, including records and documents in the possession of the parties that are offered into evidence, are part of the hearing record." *Id.* A ULJ "may exclude any evidence that is irrelevant, immaterial, unreliable, or unduly repetitious." *Id.* Likewise, a ULJ "may limit repetitious testimony and arguments." Minn. R. 3310.2921.

Many of Cordes's arguments are unavailing under the administrative rules. The ULJ was not required to give Cordes and Heartland equal time to present testimony or evidence; nor was the ULJ required to consider all of Cordes's evidence. Rather, the ULJ's duty was to develop all relevant facts and make a decision based on the reliable, probative, and substantial evidence. *See* Minn. R. 3310.2921-.2922.

The only issue in Heartland's appeal of DEED's eligibility determination was whether Cordes quit because of a good reason caused by Heartland. A review of the record, including the transcript of the evidentiary hearing, does not indicate that the ULJ unfairly limited Cordes's presentation of her case or restricted her from offering evidence regarding that issue. The ULJ occasionally interrupted Cordes, overruled her objections, and precluded her from presenting certain testimony or evidence, but the record shows that the ULJ was attempting to keep the three-day hearing focused on the relevant issue. As the ULJ stated, "[s]ome testimony was excluded because it was not relevant to

11

[Cordes's] claims of discrimination, harassment, and retaliation, or it was tangential, repetitive, or unlikely to affect the outcome of the appeal." Moreover, Cordes had substantial opportunities to cross-examine witnesses and testify, in addition to giving a closing statement. Indeed, Cordes cross-examined all of Heartland's witnesses.

Cordes complains that Fagnan was not allowed to testify, even though Heartland's witnesses "were allowed ample opportunity to give their entire narrative." The record belies that claim. Fagnan told the ULJ that, although he had not worked for Heartland, Cordes "only worked a few shifts where [he] wasn't present, either in the parking lot or in one of the stores." When the ULJ asked Cordes if she had any testimony from Fagnan, she replied, "If you have any questions for Mr. Fagnan he'd be more than happy to answer them. As for whether or not he has anything he'd like to add I can't speak for him on that matter, that's up to him." The ULJ gave Fagnan an opportunity to speak but quickly stopped him after he began discussing his "long, long history" with district manager Ed Davis, his ex-girlfriend, and her sister. After the ULJ redirected Fagnan, Fagnan discussed his work history and alleged that he observed food-safety issues at one of Heartland's restaurants. The ULJ noted that Cordes quit because of harassment and retaliation, not food-safety issues, and Fagnan stated, "I guess my testimony was done. I'll send you back over to [Cordes]."

Cordes also complains that the ULJ failed to determine whether Heartland violated various federal and state statutes, including 42 U.S.C. § 2000e-3(a) (2012) (Title VII of the Civil Rights Act of 1964), Minn. Stat. § 177.253 (2014) (mandatory work breaks), Minn. Stat. § 181.961 (2014) (review of personnel record by employee), and Minn. Stat.

12

§§ 363A.01-.44 (2014) (Minnesota Human Rights Act). But the dispositive issue was whether Cordes gave Heartland a reasonable opportunity to correct adverse working conditions. Thus, the ULJ's failure to determine whether Heartland violated the specific statutes does not prejudice Cordes's substantial rights.

In sum, our review of the record satisfies us that the ULJ's decision was made upon lawful procedure and Cordes's substantial rights were not prejudiced. *See* Minn. Stat. § 268.105, subd. 7(d).

*Subpoena Request*

Cordes complains that the ULJ "fail[ed] to grant access to key witnesses." We construe this argument as an assertion that the ULJ erred by denying Cordes's subpoena requests. A ULJ "may issue subpoenas to compel the attendance of witnesses . . . upon a showing of necessity by the requesting party." Minn. R. 3310.2914, subp. 1 (2014). "A request for a subpoena may be denied if the testimony or documents sought would be irrelevant, immaterial, or unduly cumulative or repetitious." *Id.*; *see also* Minn. R. 3310.2921 (providing that a ULJ "may limit repetitious testimony and arguments"). Whether to issue a subpoena rests within the ULJ's sound discretion, and this court "will not reverse the decision absent an abuse of discretion." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 853 (Minn. App. 2014), *review denied* (Minn. July 15, 2014).

During the evidentiary hearing, Cordes requested that the ULJ subpoena two Heartland employees, Bev Trombly and Wendy Matheson. Cordes stated that Trombly was the district manager of the east St. Paul restaurant when she started working there and that Matheson made Davis the district manager of the east St. Paul restaurant after

Cordes made her harassment complaint. Cordes stated that she contacted Trombly to obtain the employee hotline number and that Trombly told her that someone from the human-resources department would contact her. Cordes added that she "briefly touched on" her harassment complaint with Trombly but "wanted to save it mostly for the human resources department." Cordes also stated that she wanted to ask Matheson about "her reasoning behind [Davis's assignment] as well as ask her several other questions in regards to the changing of districts." The ULJ denied both of Cordes's subpoena requests because both Trombly and Matheson "were involved marginally if at all, and their testimony would have been duplicative and unlikely to affect the outcome of the hearing."

Based on Cordes's statements, neither Trombly's nor Matheson's testimony was necessary to the ULJ's ultimate decision. Once again, the issue was whether Cordes quit her employment for a good reason caused by Heartland. Trombly reportedly gave Cordes the hotline number and told her that the human-resources department would be contacting her. Matheson reportedly facilitated a change among the district managers. Trombly's and Matheson's reported involvement in the circumstances giving rise to Cordes's benefits claim is minimal and inconsequential. Because their testimony would have been irrelevant and immaterial, the ULJ did not abuse his discretion by denying Cordes's subpoena requests.

*Reconsideration Request*

Cordes contends that the ULJ erred by denying her request for reconsideration, arguing that the ULJ should have granted her request and held another hearing "to receive

14

relevant evidence."

"In deciding a request for reconsideration, the unemployment law judge must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." Minn. Stat. § 268.105, subd. 2(c) (2014).

> The unemployment law judge must order an additional hearing if a party shows that evidence which was not submitted at the hearing:
> (1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence; or
> (2) would show that the evidence that was submitted at the hearing was likely false and that the likely false evidence had an effect on the outcome of the decision.

*Id.* "This court will not reverse a ULJ's decision to deny an additional evidentiary hearing unless the decision constitutes an abuse of discretion." *Kelly v. Ambassador Press, Inc.*, 792 N.W.2d 103, 104 (Minn. App. 2010).

The ULJ denied Cordes's reconsideration request, determining "the findings of fact and decision to be supported by the evidence and the law." The ULJ noted that Cordes had submitted "a lengthy written argument and 157 pages of additional documents" in support of reconsideration but concluded that the evidence "was available at the time of the appeal hearing" and that Cordes had "not shown good cause for not submitting the evidence in the appeal hearing." The ULJ added that "the additional information offered on reconsideration would not be likely to change [the] outcome of the appeal."

15

Cordes argues that the ULJ erred by not considering her "persuasive, newly discovered evidence." Cordes describes the evidence that she submitted with her reconsideration request, but she does not explain why the evidence would have changed the outcome. Nor does she explain how her new evidence shows that evidence submitted at the initial hearing is likely false or how that likely false evidence affected the outcome. Lastly, she does not assert that she had good cause for not submitting the evidence at the initial hearing. For those reasons, Cordes's argument that the ULJ erred by denying her request for reconsideration is unavailing.

In conclusion, the ULJ did not err by determining that Cordes is ineligible for benefits, and Cordes has not established a basis for relief on appeal. We therefore affirm.

**Affirmed.**