*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1971**

Rosevelt Beal,
Relator,

vs.

Stan Koch & Sons Trucking, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed August 15, 2016**
**Affirmed**
**Stauber, Judge**

Department of Employment and Economic Development
File No. 33870680-2

Rosevelt Beal, Odum, Georgia (pro se relator)

Koch Companies, Minneapolis, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**STAUBER**, Judge

In this unemployment-compensation appeal, relator argues that (1) the unemployment-law judge (ULJ) erred by determining that he is ineligible to receive unemployment benefits because he quit his employment; (2) the ULJ improperly excluded evidence at a hearing; and (3) the statutory calculation of his weekly wage benefit is incorrect. We affirm.

## FACTS

Relator Rosevelt Beal was employed by respondent Stan Koch & Sons Trucking, Inc. as a general-delivery-truck driver, from May 15, 2014 to July 26, 2015. In the spring of 2015, relator was injured on the job while unloading golf carts. He returned to work with a light-duty restriction in late June or early July. When relator was fully cleared to return to work, he was assigned over-the-road routes rather than his previous dedicated route for a particular client. Relator testified that he received lower pay following this assignment change, but William Sullivan, director of safety and driver management for respondent, testified that relator received pay that "was at least the same if not a little bit more" in his new assignment. According to relator, when he met with Sullivan to address the pay discrepancy on July 7, he was accused of driving violations and failing to follow company policies in unloading the golf carts.

Relator was driving his truck in Georgia on July 15 when he witnessed a serious one-car highway accident that resulted in a fatality. Relator received no citation as a result of the accident, but his trailer was struck and damaged by paper rolls that had

broken loose from another truck. Relator reported the accident to his employer, and Sullivan called relator to discuss the details. During their discussion, relator accused Sullivan of suggesting that the damage to relator's trailer could not have occurred as relator described it and of implying that relator had something to do with the accident; relator then abruptly ended the call.

Sullivan testified that he oversaw the handling of accidents and employee-injury cases for respondent. He stated that relator was not following proper company procedures when he was injured in the spring of 2015 and that Sullivan had received several automatic critical-event reports for excessive speed involving relator's truck, but that at the time of the accident in July, relator's job was not in jeopardy. According to Sullivan, he attempted to discuss the Georgia accident with relator, but relator gave confusing answers describing the accident, and, upon further questioning, relator refused to respond to questions. Sullivan testified that he needed to ascertain what happened during the accident because the company anticipates litigation in "complex accidents." Sullivan also claimed that he did not accuse relator of causing the accident and that relator said he would only speak if his attorney was present. Sullivan further testified that he attempted to encourage relator to speak with someone else in the company.

During the last week of July, relator was assigned to drive from Georgia to Wisconsin. While en route, he was told that Sullivan wanted him to drive from Wisconsin to Minnesota to meet with Sullivan to further discuss the July 15 accident. Relator decided to quit when he was not allowed to have his attorney present for the

meeting and because he "got the impression that all [Sullivan] wanted to do was terminate me at that point." On July 27, relator turned in his truck.

Relator was initially determined ineligible to receive unemployment benefits, although the department also determined the amount of benefits he would collect if eligible. He challenged both the ineligibility and benefit-amount determinations. Following a hearing on both issues, the ULJ determined that relator did not have good cause to quit and that his wages had been properly calculated for purposes of unemployment compensation. On his motions for reconsideration, the ULJ affirmed. Relator brought this certiorari appeal.

## D E C I S I O N

On review of a ULJ decision, this court may affirm the decision or remand the case for further proceedings, or reverse or modify the decision if it is affected by an error of law or unsupported by substantial evidence in view of the whole record. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). We view the ULJ's factual findings in the light most favorable to the decision being reviewed, and we defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

### I. Eligibility for benefits

Relator argues that he quit his employment rather than be discharged, so that he therefore should be eligible to receive unemployment compensation. We review de novo a ULJ's eligibility decision and determination of whether an employee who quits falls within a statutory exception, making the employee eligible for unemployment benefits.

4

*Fay v. Dept. of Emp't & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015); *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000).

Generally, a person who quits employment "is ineligible for all unemployment benefits." Minn. Stat. § 268.095, subd. 1 (2014). An exception to this rule exists if the employee "quit the employment because of a good reason caused by the employer." *Id.*, subd. 1(1). A good reason to quit "is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014).

Relator argues that he quit because he was about to be discharged. But the ULJ found that relator was not about to be discharged, and there is substantial evidence in the record to support this finding. Sullivan testified that he did not intend to discharge relator after the July 15 accident and that he merely wished to discuss the accident with relator for business reasons. The ULJ credited this testimony. Relator did not testify that anyone from the company told him that he was about to be discharged, only that it was his "impression" that he was about to be discharged. On conflicting testimony, this court defers to the ULJ's decision. *See Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006) ("When witness credibility and conflicting evidence are at issue, we defer to the decision-maker's ability to weigh the evidence and make those determinations."). Therefore, the ULJ did not err by concluding that relator was ineligible to receive unemployment benefits.

5

## II. Evidentiary ruling

Relator argues that the ULJ abused its discretion by refusing to allow him to request reports of recorded statements that he and Sullivan separately made to dispatch regarding "the meeting, the reason for the quit, and circumstances behind the quit." The ULJ noted that he had received statements and heard testimony from the principals regarding relator's separation from employment. The ULJ determined that he had "as much information [as] I need" and that the additional requested information was not relevant.

Under Minn. R. 3310.2922 (2013), a ULJ may receive any evidence of probative value but has discretion to "exclude any evidence that is irrelevant, immaterial, unreliable, or unduly repetitious," and "is not bound by statutory and common law rules of evidence." Relator argues that the excluded evidence was "the more convincing evidence as it is the more accurate record." Because relator claimed that the reports included only separate conversations between relator or Sullivan and dispatch, any discussions included in those reports were not as probative as evidence of relator's and Sullivan's conversations with each other. Further, many of the peripheral issues were not disputed, and to the extent that the reports may have established background facts, they were redundant. We observe no abuse of discretion in the ULJ's refusal to admit this evidence. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 530 (Minn. App. 2007) (noting that ULJ has discretion to admit or exclude evidence); *see also Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 585 (Minn. 1977) (applying harmless-error rule to ULJ's evidentiary ruling).

### III.  Benefits calculation

Finally, relator challenges the calculation of his weekly benefit rate for purposes of establishing an unemployment-compensation-benefits account.  His weekly benefit rate was set at $412, consistent with the calculation provided for under Minn. Stat. § 268.07, subd. 2a(a)(2) (2014).[1]  The ULJ did not apply the lesser weekly amount of $364 provided for under Minn. Stat. § 268.07, subd. 2a(a)(1) (2014).[2]  The statute mandates that the applicant be assigned "the higher of" these two rates.  *Id*. at subd. 2a. In affirming its original decision in its order of affirmation, the ULJ noted that relator did not offer evidence to support his assertion that the benefit amount should be greater than $412, nor did he offer evidence showing any inaccuracies in the calculations to support this figure.  On appeal, relator contends only that he should be awarded the higher benefit rate provided in the "subdivision 2 formula."  It appears that relator believes that he was assigned a lesser rate under the statute when the $412 awarded actually represents the higher figure of the two possible rates provided for under the statute.  Because the ULJ did award relator the higher of the two rates, relator has not identified a factual or legal basis for challenging the ULJ's original decision.  *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (noting that assignment of error that is based on mere assertion and unsupported by argument or legal authority is waived unless prejudicial error is obvious).  Relator is not entitled to relief on this ground.

**Affirmed.**

---

[1] This provision is based on an average weekly wage during a "high quarter."  *Id*.

[2] This provision is based on an average weekly wage during a "base period."  *Id.*